[Civ. No. 26575.   Second Dist., Div. Two.   May 16, 1963.]

METROMEDIA, INC., et al., Plaintiffs and Respondents, v. CITY OF PASADENA et al., Defendants and Appellants.

Wendell R. Thompson, City Attorney, Fred M. Metheny, Assistant City Attorney, Donald B. Hagler, and Evelynn M. Finn, Deputy City Attorneys, for Defendants and Appellants.

Gibson, Dunn & Crutcher, William French Smith, Iverson & Hogoboom and William P. Hogoboom for Plaintiffs and Respondents.

Richman, Garrett & Ansell, Lionel Richman and Brobeck, Phleger & Harrison as Amici Curiae on behalf of Plaintiffs and Respondents.

HERNDON, J.—This appeal by the City of Pasadena and other named defendants, hereinafter generally referred to as "appellants," is taken from a judgment which declares that certain ordinances of appellant city regulating billboards are unconstitutional and enjoins their enforcement.

Ordinance No. 4487, hereinafter referred to as the "bill-

board ordinance," provides, in part, that effective May 17, 1959, "No roof sign shall be erected, constructed, relocated or maintained upon any building excepting those which (1) bear the name of the building whereon the sign is located; (2) bear the name of the person, firm or corporation occupying the building or portion thereof and the type of business conducted by said person, firm or corporation. All said signs must be an integral part of the building. No more than one roof sign shall be permitted for each exterior facing of a building." This ordinance defined "roof sign" as "a sign erected upon or above a roof or parapet of a building." Existing signs were exempted from this ordinance except insofar as their removal might be required by the zoning ordinance applicable to such signs or uses.

Ordinance No. 4495, effective July 19, 1959, hereinafter referred to as the "zoning ordinance," amended "The Zoning Plan and Code of the City of Pasadena" by providing in part that all roof signs, except those relating to the ownership or business conducted on the premises, would have to be removed prior to July 1, 1961.

On July 15, 1954, appellant city had amended its then effective zoning ordinance so as to prohibit the *future* construction of outdoor advertising structures in Zone C-2 (retail-commercial), but permitted the continued maintenance of such signs then extant. The above mentioned zoning ordinance of July 19, 1959, also provided that existing "ground signs" which did not meet the requirements of the 1954 amendment, would have to be removed by July 1, 1961. However, the continued construction and use of "ground signs" still remained permissible in all other commercial and industrial zones.

Respondents herein are two firms "engaged in the outdoor advertising business, including the erection and maintenance of outdoor advertising structures on leased property, and the sale of advertising space on such outdoor advertising structures. . . ." Prior to the enactment of the ordinances in question, respondent Metromedia, Inc., had erected 13 roof signs in the City of Pasadena and respondent Pacific Outdoor Advertising Company, hereinafter referred to as "Pacific," had erected 20 such signs.

The sole question presented by this appeal is whether or not the trial court erred in its judgment, holding in effect, that the distinction made in these ordinances between "point-of-sale" and "non-point-of-sale" signs rendered them uncon-

stitutional as being "unreasonable, arbitrary, confiscatory and discriminatory in *classification*. . . ." (Italics added.)

Although respondents have urged many other considerations in the brief filed by them in this court, it is apparent from the judgment, the findings of fact, and the stipulations entered into by the parties during the trial, that no other basis for a holding of unconstitutionality either was urged by respondents during the trial or was passed upon by the trial court.[1]

These stipulations by respondents indicating the limits of the issues being presented were virtually mandatory in any event, because their expert on zoning plans and ordinances had testified earlier that he considered it established beyond question that sound planning and zoning practice required the total elimination of billboards in certain districts and their regulation in all districts. However, he expressed his opinion that "non-point-of-sale" signs still should be considered proper in industrial areas and, further, that there was, in his opinion, "no objective basis for discriminating in regulation between standard poster panels and point-of-sale signs."

We, therefore, are not called upon to consider whether or not certain early decisions in this state (which were written prior to the need for, or the adoption of, comprehensive zoning plans) would require us to destroy the patterns sought to be created by local legislative bodies acting upon reports and studies laboriously compiled by their planning commissions. Today, economic and aesthetic considerations together constitute the nearly inseparable warp and woof of the fabric upon which the modern city must design its future. Respondents, having spared the trial court the task of attempting to distinguish and weigh these threads, may not now urge such considerations upon this court in support of a judgment rendered after a trial which was limited to more restricted issues.

Further, although the trial court found that the ordinances in question created an unconstitutional "classification," it expressly struck from the proposed judgment as submitted by respondents, a determination that said ordinances also operated as an unconstitutional "prohibition" of respondents' businesses. This was entirely proper, because said ordinances do not even purport to "prohibit" outdoor

[1]See footnote 1 appended at end of opinion.

advertising by means of non-point-of-sale billboards in those industrial and commercial zones in which respondents claim any right to operate, but merely regulated their use of rooftops and required the elimination of the nonconforming use formerly permitted in C-2 zones.

Therefore we are not called upon to decide whether or not respondents' billboards might be eliminated entirely from the City of Pasadena by appropriate legislation directed to that purpose. ■ The only evidence submitted by respondents in support of this secondary issue was offered for the purpose of showing that as the city expands it becomes increasingly difficult for them to find ground sites that are visible to a sufficiently large surrounding area, and that, as the values of such properties increase, it becomes more difficult for them to compete economically in obtaining such sites from other potential commercial users. This problem, however, would face respondents regardless of the regulations placed upon roof signs. Certainly the inexorable pressures of supply and demand cannot reasonably be urged as grounds for declaring unconstitutional otherwise valid regulations.

Finally, by reason of the stipulations which are set forth in footnote, 1, appended hereto, no issue was tendered to the court below with respect to the reasonableness of the period allowed respondents for the removal of their nonconforming signs; hence, this potential basis for arguing the unconstitutionality of the ordinances is not before us. (Cf. *City of Santa Barbara* v. *Modern Neon Sign Co.*, 189 Cal.App.2d 188, 195-196 [11 Cal.Rptr. 57].)

■ As indicated, then, we are faced with this single question: Is an ordinance which, for regulatory purposes, separately classifies point-of-sale and non-point-of-sale "unreasonable, arbitrary, confiscatory and discriminatory" in such classification? We believe that common sense, logic, precedent and the public interest combine to dictate a definite and positive answer in the negative.

At the time this case was tried, no appellate court in California had decided the precise issues then presented, and respondents, in their points and authorities filed below, relied upon a memorandum opinion of the Superior Court of Monterey County filed June 26, 1961. On December 27, 1962, Division Three of the First District Court of Appeal, reversed the trial court on this point in *National Advertising Co.* v. *County of Monterey*, 211 Cal.App.2d 375, 379-380 [27 Cal.Rptr. 136], stating:

"It is true that signs 'relating only to goods sold or services rendered upon the building site on which . . . erected or maintained,' as permitted by the ordinance, may, although strictly limited as to size and number, have much the same appearance as off-site signs. A significant difference, however, is that the on-site sign is but a part of, and wholly incidental to, the business conducted upon the site and which the ordinance has properly determined to be permissible in that district. Off-site signs, on the contrary, constitute a wholly distinct business, that of outdoor advertising (see opinion of Brennan, J., in *United Advertising Corp.* v. *Borough of Raritan*, 11 N.J. 14 [93 A.2d 362]). The ordinance before us merely limits the business of outdoor advertising, as it limits other businesses, to specified districts. An early (1909) case cited by plaintiffs (*Varney & Green* v. *Williams, supra,* 155 Cal. 318 [100 P. 867, 132 Am.St.Rep. 88, 21 L.R.A. N.S. 744]) is not in point because it did not involve a comprehensive zoning ordinance.

"From other jurisdictions, plaintiffs cite only a trial court opinion (*Central Outdoor Advertising Co.* v. *Village of Evandale* (Ohio Ct. Com. Pleas) 124 N.E.2d 189). The great weight of authority supports the propriety of the classification (*United Advertising Corp.* v. *Borough of Raritan, supra*; *Kelbro, Inc.* v. *Myrick*, 113 Vt. 64 [30 A.2d 527]; *Rockingham Hotel Co.* v. *North Hampton*, 101 N.H. 441 [146 A.2d 253]; *Criterion Service, Inc.* v. *City of East Cleveland* (Ohio App.) 55 Ohio L.Abs. 90 [88 N.E.2d 300]; *Landau Advertising Co.* v. *Zoning Board of Adjustment*, 387 Pa. 552 [128 A.2d 559]; *Murphy, Inc.* v. *Town of Westport*, 131 Conn. 292 [40 A.2d 177, 156 A.L.R. 568]). We accept the reasoning of those decisions, and sustain the classification."

█ The following discussion found in the cited case of *United Advertising Corp.* v. *Borough of Raritan*, 11 N.J. 14 [93 A.2d 362, 365-366], appears most apposite here:

"The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff's placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the ordinance provides is that this business shall not to that extent be allowed in the borough. █ It has

long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction. [Citations.]

"And as such separate classification offends no constitutional provision, there also exists no invidious discrimination in the provisions of the ordinance barring plaintiff's signs in the business and industrial zones while allowing therein manufacturing plants, junk yards, coal and coke yards and other uses suggested by plaintiff, as also having undesirable attributes. It is enough that outdoor advertising has characteristic features which have long been deemed sufficient to sustain regulations or prohibitions peculiarly applicable to it."

It is to be noted that, unlike the ordinance discussed in the *Raritan* decision, the ordinances here involved do not even purport to prohibit respondents from conducting their businesses in all zones, or, in fact, in any zone where such businesses have been authorized since 1954. It merely regulates their activities to the extent that rooftop signs no longer will be permitted. The reasonableness of this regulation is strengthened by the other provisions in the ordinance which require that even those point-of-sale rooftop signs that still may be used in the affected zones henceforth "must be an integral part of the building." The enforcement of this requirement will result in the removal of all those point-of-sale signs which respondents assert are "identical" to their own, for it does not appear that any of respondents' signs is "an integral part of the building" upon which it is placed.

In addition, most of respondents' arguments relating to their "use" of the land upon which their signs are located are mere exercises in sophistry, for in no real sense are the signs "used" upon the *land* on which they are located. As the president of respondent Pacific Co. testified: "Q. Would you describe the manner in which you as a business or industry locate these locations for your business? A. Well, we have certain standards in our business that we must adhere to, and those standards are largely based on circulation and visibility. Q. Would you explain what you mean by circulation? A. Well, in order to warrant the cost of our medium, there must be certain minimum standards of traffic, number one; and, number two, in the field of visibility, obvi-

ously what you are going to sell must have a reasonable opportunity to be seen.''

Clearly, then, the signs are used in a realistic sense only where the light reflected therefrom strikes the eyes of the users of the public streets or adjoining private property. In the case of roof signs, their true ''use'' may occur at considerably distances, even on property located in other zones, and may not even be visible, i.e., ''capable of being used,'' by persons located upon the same property as the sign. Moreover, unlike point-of-sale signs, the members of the public required to ''use'' respondents' signs gain no benefit therefrom in the sense that they are thereby directed to the location of a business activity which they may be immediately desirous of patronizing.

On the contrary, respondents' signs merely extol the alleged merits of various products in the abstract and are neither directional guides nor identifying markers relating to the business or use actually being conducted on the property upon which they are located. The distinction between the two classes of signs, therefore, is not unreasonable, arbitrary or discriminatory in any constitutionally prohibited sense.

Judgment in the instant case was rendered prior to our Supreme Court's decision in *Consolidated Rock Products Co. v. City of Los Angeles*, 57 Cal.2d 515 [30 Cal.Rptr. 638, 370 P.2d 342], upholding an ordinance that effectively prohibited the owner of property, suitable only for use as a source of rock, sand and gravel, from exploiting the same, notwithstanding the finding of the trial court that such operations could be conducted thereon ''with compatibility to adjacent properties.'' The court stated at pages 522-523:

''So in *Ambler, supra*, The United States Supreme Court said (272 U.S. at p. 388 [47 S.Ct. 114, 71 L.Ed. 303, 311, 54 A.L.R. 1016, 1025]) 'If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.' This test of the validity of comprehensive zoning regulations has consistently been applied and followed by this court, so that whenever we have found that reasonable minds might differ as to the necessity or propriety of particular regulations or classifications, we have bowed to the legislative determination and sustained the regulation. [Citations].''

In the instant case, viewing the evidence in the light most favorable to respondents, as we are required to do, the best that can be said is that it proved that reasonable minds

*could differ* rather than that reasonable minds *could not differ.* Thus, respondents' witnesses offered their opinions that the admitted "sign clutter" was more the fault of point-of-sale signs than of respondents' signs, and therefore that the present ordinance was not best suited to solve the recognized problem. Further, when respondents' expert on planning was discussing the possible grounds for the classification made, he stated:

"I then looked at another possible basis for distinguishing between point-of-sale signs and standard poster panel signs, and I asked myself, is it possible that a distinction can be made on the basis that if point-of-sale signs are permitted and standard outdoor signs are prohibited, the number of signs will be reduced, and I honestly think, it is my real opinion, that this is the real reason for making a distinction between point-of-sale signs and standard outdoor signs. It is an unspoken reason. *I am not sure* that it is a valid reason because *I very much doubt* that that will reduce the total number of roof signs. But even if it were to reduce it to a total number of roof signs, I would say that was not a reasonable and objective basis for regulating the number of roof signs. They should be directly related with provisions that apply equally to all types of roof signs." (Italics added.)

Upon cross-examination this same witness testified: "Q. You recognize the fact in general that signs are an evil in Pasadena? A. Yes, I think the sign situation is bad and I think that it is in general, and I think that the so-called point-of-sale signs are the ones that are the offenders. . . . Q. And I am also sure, from your experience as a planner, you realize that it is impossible practically to cure all these evils at one time; isn't that true? A. Yes, but I would say that . . . the proper method of attacking the problem is not to say, 'We will cure the evil all at one time,' but that we will begin to correct the evil uniformly, and I would think we would devote our major efforts to the areas in which the greatest problems existed first. . . . Q. Now, I believe you testified that there was no difference, in your opinion, or words to that effect, between point-of-sale signs and outdoor advertising structures in Pasadena? A. That's correct, sir. *No, I did not mean to say there was no difference. There obviously are some differences.* What I meant to say, and I hope I said it, was that I was able to find no objective basis for discriminating in regulation between standard poster panels and point-of-sale signs." (Italics added.)

Evidence was received upon which the trial court made findings, *inter alia,* that respondents' signs provided a useful service to the community and were of economic value to it; that some local businesses used the signs and other businesses dealt in the products advertised thereon; that the Pasadena Chamber of Commerce utilized outdoor advertising signs located outside the city to induce people to shop therein; that outdoor advertising signs were substantially less expensive to advertisers than other forms of advertising; that respondents' signs had won art awards for the quality of the material portrayed thereon; that "leading authorities" recognize outdoor advertising as an accepted use of land and buildings in certain areas; and that there is "no *measurable* causal connection between outdoor advertising signs, and traffic accidents." (Italics added.)

Accepting these findings as true, it may be assumed, as stated by respondents' expert, that appellant city was unwise in attacking the evil admittedly existing within its jurisdiction, in the fashion determined upon; however, as was stressed in the *Consolidated Rock* case, *supra,* 57 Cal.2d 515, 523, this assumption furnishes no ground upon which a court properly may substitute its judgment for the lawfully constituted authority, and on constitutional grounds, deprive the authorized legislative body of its right to experiment, a right that necessarily includes the right to err.

Relative to the question of uniformity of method in attacking an admitted evil, it long has been recognized, even in the application of penal legislation, that: "A lack of abstract symmetry does not matter. The question is a practical one, dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named." (Mr. Justice Holmes in *Patsone* v. *Pennsylvania,* 232 U.S. 138, 144 [34 S.Ct. 281, 58 L.Ed. 539, 543].)

If uniformity or symmetry is not demanded in the application of criminal sanctions or in the total prohibition of otherwise legal and socially useful activities in specified areas of a municipality, then certainly it is not required here where respondents' activities are not being prohibited, but only regulated in a manner found reasonably essential to protect the public interest.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied June 14, 1963, and respondents' petition for a hearing by the Supreme Court was denied July 10, 1963. Schauer, J., was of the opinion that the petition should be granted.

---

[1]The following proceedings appear in the trial record. The court, addressing counsel for appellants with regard to the scope of admissible evidence, stated:

"I will agree with you, and I think counsel would almost stipulate, that what you have said is true, because in my book it is true; but this case, I know that you have the legislative right to enact ordinances about signs, we all agree on that, there is no question." The discussion then proceeds: "Mr. Metheny [Counsel for appellant city]: Apparently not. Mr. Hogoboom: [Counsel for respondent Pacific Co.]: Oh, no, we agree to that. Mr. Smith [Counsel for respondent Metromedia]: With respect to regulation of signs? Oh, yes. Mr. Hogoboom: Certainly we have been regulated for years. Mr. Smith: In my opening statement I conceded that. Mr. Hogoboom: We conceded that.

"The Court: To get back, the turning point of this case is the fact that you are *regulating* non-point-of-sale signs and you are *allowing* point-of-sale signs. That is what I think is the main issue and probably the only issue so far in this case. . . . You have the police power to regulate signs, we all agree, don't we? Mr. Hogoboom: Yes. Mr. Smith: Yes. The Court: The only issue here, I think, is this unconstitutional discrimination. Mr. Metheny: I would like to agree with you if that were the only issue, I would be much more relaxed than I am now. The Court: That is all I see. What other issue do you think there is in this case? Mr. Metheny: I think this question whether or not we have the police power if you find that there is——

"The Court: Opposing counsel have already said that you have the power to regulate signs. Mr. Hogoboom: Our whole testimony has gone to prove the point that you have just made and that is that it is an illegal discrimination, there is no valid basis for it, and we have simply set up all of the possible bases for distinction and knocked them down. That is all we are doing. Mr. Metheny: Will counsel stipulate that is the only issue? Mr. Smith: Could I say this? Mr. Metheny: If they want to narrow it down, I will, but the minute we get out of this court into the District Court of Appeal they might well argue, I will put it that way, we have legislated purely on aesthetics because there is nothing else to support this, and then they will cite the *Varney and Williams* versus *Green* and say, 'Here is a tremendous holding that says you cannot do it just for this reason,' which brings up another issue. Mr. Smith: We would like to note, in any case, we think the present testimony is entirely irrelevant. For one thing it goes to issues, I think, which are not in dispute, namely, I guess the City of Pasadena is growing, and secondly that in any case, assuming the purpose for this, we will say, quite aside from the point-of-sale versus other signs discrimination, that the city, on the grounds that it is growing, cannot single out one legitimate business and say 'You have to go,' and not treat other businesses involved in the same situations on the same basis. . . .

"The Court: Let me try to summarize and see if we can get an agreement, and you correct me if I am wrong. No one here, neither side, contends that the City of Pasadena does not have the right to regulate signs under their police power. Mr. Hogoboom: I will go further. I will

stipulate they have a right to regulate within their comprehensive zoning plan any commercial establishment within the City, where they can be located, in what zones they can be located, the conduct of the business in various licensing statutes. They can even regulate hours of business of some because for valid reasons there are distinctions, but they simply cannot, we contend, single out—— The Court: Let's stop right there. Do you agree with that, Mr. Smith? Mr. Smith: Yes. Mr. Metheny: We will accept that stipulation.

"The Court: That is out of the way. Now, the only issue that I see right now is that the plaintiffs feel that while the City has the right to regulate signs, that in this particular ordinance or ordinances they acted in a discriminatory manner, discriminating against certain businesses and excluding other businesses. And in effect, I am saying the same thing, they had no right to prohibit non-point-of-sale signs and allow the three types of signs that are in the ordinances. Mr. Metheny: You are stating that as the only issue? The Court: Isn't that it? Mr. Metheny: I will stipulate that is the only issue, only other issue. Mr. Smith: The judge referred to two issues. The Court: Two are actually one as far as I am concerned. Do you think there are two? Mr. Smith: Yes, I do.

"The Court: You state them then. Mr. Smith: I do. I think one issue goes to the question as to whether or not the City can legislate a business such as ours out of existence, prohibit it, in commercial and industrial areas where other businesses are permitted. That is one issue. As I say, that is the basic issue. Then, the second issue goes to the question as to whether or not they can discriminate as we say they have here between so-called point-of-sale signs and our type of signs, you see. The Court: Then you are contending that it would even be an invalid act if the city were to say no advertising roof signs at all? Mr. Smith: In commercial and industrial areas, yes. . . . The Court: But at least we have narrowed down the situation to two issues, one of which, I think, is very important, the one I said before. Mr. Metheny: Yes, I concur."