UNITED ADVERTISING CORPORATION, PLAINTIFF-APPEL-
LANT, v. BOROUGH OF METUCHEN AND IRVING T.
WOERNER, BUILDING AND ZONING INSPECTOR, DE-
FENDANTS-RESPONDENTS.

Argued January 20, 1964—Decided March 16, 1964.

(1)

*Mr. Martin J. Loftus* argued the cause for appellant (*Miss Marilyn H. Loftus*, on the brief; *Messrs. Loftus and Loftus*, attorneys).

*Mr. Robert F. Moss* argued the cause for respondents.

The opinion of the court was delivered

PER CURIAM. This case involves the validity of a provision of a zoning ordinance prohibiting out door advertising signs other than those related to a business conducted on the premises. Off-premise signs are prohibited throughout the municipality. Plaintiff sought to erect one such sign in a business district and another in a manufacturing district. Defendant obtained summary judgment on motion. We reversed, holding that plaintiff was entitled to adduce facts in support of its constitutional challenges. *United Advertising Corp. v. Borough of Metuchen,* 35 *N. J.* 193 (1961). The case was thereafter tried and judgment again rendered in favor of defendant. We certified plaintiff's appeal before the Appellate Division heard it.

Plaintiff wishes to erect billboards 12 feet in height by 25 feet in width. These are standard dimensions for billboards throughout the country. Plaintiff concedes its billboards do not belong in residential or scenic areas, but its business being lawful, it claims it should be permitted to operate among other businesses and in industrial districts as well.

Plaintiff's position was rejected in *United Advertising Corp. v. Borough of Raritan,* 11 *N. J.* 144 (1952), where the Court refused to strike down an ordinance barring off-premise signs throughout the municipality. Plaintiff contends that case was wrongly decided because the evils once thought to abound in this setting were unreal or had been eliminated by the time of that decision and in truth no zoning purpose remained to be furthered by the ban. Further, plaintiff urges the discrimination between off-premise and on-premise signs violates the mandate of *N. J. S. A.* 40:55-31 that "All such regulations shall be uniform for each class or

4

kind of buildings or other structures or uses of land throughout each district * * *."

As to the first proposition, plaintiff starts with an analysis of *Thomas Cusack Co. v. City of Chicago*, 242 *U. S.* 526, 37 *S. Ct.* 190, 61 *L. Ed.* 472 (1917), one of the cases cited in the *Raritan* opinion. *Cusack* did not involve a zoning ordinance. Rather the ordinance was addressed to the special evils then charged to billboards. They included the accumulation of offensive materials and rubbish, and the shield afforded for immoral practices and for loiterers and criminals. As to such matters, plaintiff says that today billboards are so constructed, positioned and maintained that these ills no longer exist. In other words, plaintiff says that proper regulation will suffice and enforcement is not so burdensome that prohibition is warranted.

With respect to whether billboards create traffic hazards, a topic which came to the scene after *Cusack*, plaintiff says that, as to obstruction of view, appropriate setbacks are sufficient; and as to distraction of the motorist, plaintiff claims the billboard, although designed to attract, presents no hazard because a driver's peripheral vision will embrace the roadway while he looks left or right to read the advertisement, and in fact such momentary diversions prevent road hypnosis and thus mean safer driving. Expert testimony was offered to maintain the last proposition, and the trial court was persuaded by it. We have some reservations as to whether billboards would not be a hazard in heavy traffic where a driver has quite enough to do to watch for sudden movements of men and machines. At any rate, for present purposes we accept the trial court's agreement with that testimony.

That the evils which prompted earlier legislation may be gone or be well in hand does not end the inquiry, for new circumstances generate new problems. Since the time *Cusack* was decided, it has been universally recognized that the growth in population, in commerce, in industry, and in land utilization call for order in land uses, to preserve human values and to conserve property values. Hence our zoning

statute authorizes ordinances to achieve aims made necessary by the new scene and expressed in *R. S.* 40 :55–32 :

"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; *promote* health, morals or *the general welfare*; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, *and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality.*"

We have italicized the portion which we think here pertinent.

As we have said, plaintiff concedes a billboard does not belong in a residential area or in places of scenic beauty. The concession is put in terms that billboards are a business use and hence may be barred wherever business does not belong. We think the concession is correct, not merely because billboards are a business use, but because they would clash with those settings whether they solicited an interest in toothpaste or in some charitable cause.

Much is said about zoning for aesthetics. If what is meant thereby is zoning for aesthetics as an end in itself, the issue may be said to be unexplored in our State, but if the question is whether aesthetics may play a part in a zoning judgment, the subject is hardly new. There are areas in which aesthetics and economics coalesce, areas in which a discordant sight is as hard an economic fact as an annoying odor or sound. We refer not to some sensitive or exquisite preference but to concepts of congruity held so widely that they are inseparable from the enjoyment and hence the value of property. Even the basic separation of industrial from commercial from residential, although obviously related to so much of the quoted statute as speaks of health and hazard, rests also on the aesthetic impact of uses upon the value of properties. Surely no one would say today that an industrial structure must be permitted in a residential district upon a showing that the operation to be conducted therein involves

no significant congestion in the streets, or danger of fire or panic, or impediment of light and air, or overcrowding of land, or undue concentration of population. So also the recognition of different residential districts, with varying lot sizes, setbacks, and the like, rests upon the proposition that aesthetics should not be ignored when one seeks to promote "the general welfare," as the statute says, "with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." Our cases deem aesthetics to be relevant when they bear in a substantial way upon land utilization. *Vickers v. Township Committee of Gloucester Tp.*, 37 *N. J.* 232, 247–248 (1962); *Napierkowski v. Gloucester Tp.*, 29 *N. J.* 481, 494 (1959); *Pierro v. Baxendale*, 20 *N. J.* 17, 27–30 (1955).

■ Accordingly we are not persuaded that *Raritan* should be discarded on the thesis that it relied upon evils no longer pervasive. The aesthetic impact of billboards is an economic fact which may bear heavily upon the enjoyment and value of property. It is a relevant zoning consideration. See Moore, "Regulation of Outdoor Advertising for Aesthetic Purposes," 8 *St. Louis L. J.* 191 (1963); "Zoning, Aesthetics, and the First Amendment," 64 *Colum. L. Rev.* 81 (1964).

This brings us to the charge that the ordinance, in barring off-premise signs while permitting on-premise signs, violates *N. J. S. A.* 40:55–31, which provides in part that "All such regulations shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district * * *." This issue of classification is in substance the same issue projected by plaintiff in *Raritan* and there decided against it, notwithstanding that here the stress is more upon the statute than upon constitutional provisions barring unequal treatment.

■■ The zoning statute relates to the uses of structures as well as to their nature, and the section upon which plaintiff relies must be read in that light. *N. J. S. A.* 40:55–30 provides that zoning ordinances may regulate "buildings and structures according to their construction, and the nature and

extent of their use * * *." A structure or use may be permitted if it is merely ancillary or incidental to a permitted principal use and still be barred if it is a separate, independent use. Here, the on-premise sign is a mere adjunct to a permitted business or industrial use, whereas the off-premise sign would be a separate, independent business effort. Hence it proves nothing to say that a sign is a sign.

There are obvious differences between an on-premise sign and an off-premise sign. Even if the baleful effect of both be in fact the same, still in one case the sign may be found tolerable because of its contribution to the business or enterprise on the premises. The hurt is thus supported by a need or gain not present in the case of the off-premise sign. This difference, it seems to us, suffices to support the classification.

And the classification is not impaired by the fact that the ordinance before us, if exploited relentlessly according to its literal terms, would permit on-premise signs with a total square footage in excess of that of the standard billboard. It would still be true that the permitted signs advance the business or industry on hand while an off-premise sign does not. Moreover, the sensibilities of neighbors and customers may offer a restraint which the off-premise advertiser would not feel. Still further, if experience should show that the maximum limitations upon size were ill-conceived, there is probably power to revise the ordinance and to compel compliance by existing on-premise signs whereas an off-premise sign, as part of separate business activity, might be claimed to be a nonconforming use, as *Raritan* suggested, and for that reason impervious to corrective measures. Finally, if the total impact of on-premise signs should prove to be too much, surely too much is enough. For all of these reasons we adhere to *Raritan*. *Cf. Metromedia, Inc. v. City of Pasadena*, 30 *Cal. Rptr.* 731 (*D. Ct. App.* 1963), appeal dismissed for want of a substantial federal question, 84 *S. Ct.* 636 (1964).

We find *Raritan* is appropriate here. Metuchen is a small municipality, covering 2.9 square miles, with a popula-

tion of 14,000. Its essential character is residential. Its business and industrial areas are relatively limited and the municipal aim is to achieve the maximum degree of compatibility with the residential areas. The most that can be said with respect to the proof is that reasonable men can disagree as to whether the addition of off-premise signs would disserve the general welfare. Such policy questions are committed to the judgment of the local legislative bodies. As we have said so many times with respect to zoning and other legislative or quasi-legislative decisions, a judge may not interfere merely because he would have made a different policy decision if the power to decide had been his. A court can concern itself only with an abuse of delegated legislative power, and may set aside the legislative judgment only if arbitrariness clearly appears. Plaintiff has not sustained its burden.

We think it unnecessary to discuss the other points raised.

The judgment is affirmed.

HALL, J (dissenting). The majority decides that a zoning ordinance prohibition of all "off-premises" advertising signs in a municipality with the characteristics and aspirations of Metuchen is valid even if "on-premises" signs should be allowed without restriction. While the controversy commenced over the right to erect two standard-size billboards against embankments on railroad property—one in a business district and the other in a manufacturing zone—for temporary leasing by the plaintiff to various advertisers, the challenge which the court ultimately was called upon to decide was much more abstract and broad. The two proposed locations and their surroundings became merely illustrative. Though confined to Metuchen and similar type communities, the ruling upholds an outright prohibition of all signs, no matter what their kind, size or setting, which do not refer to a business or activity conducted on the premises where located. I am concerned with the rationale upon which this result is reached, as well as with the intertwined problem of discrimination in relation to on-premises signs.

This is an unusual billboard case in certain fundamental respects not fully adverted to in the majority opinion which, when considered, seem to me to make the true rationale somewhat different from that expressed and in turn place the classification question in a different light. I refer to the fact that, by stipulation of the parties, all of the stereotyped reasons ordinarily utilized to support the use of the police power in billboard cases were removed from consideration. It was agreed that the erection of the proposed billboards would not prevent adequate light and air from reaching any surrounding buildings or dwellings, would not produce objectionable noise, vibration, odor, smoke or the like, would not conceal immoral acts and would not decrease the property value of land in the borough or change the character of the business and manufacturing districts. The only conventional factor not excluded was highway safety and the trial court's finding in plaintiff's favor on this aspect (the municipality offered no affirmative evidence to attack the opinion of plaintiff's experts) has not been challenged.[1] While these stipulations specifically referred to the two proposed signs, the argument of both sides indicates they were considered to have general application beyond the particular sites.

Accordingly, the municipality's defense of the ordinance provisions, presented primarily through the opinion of its planning expert, offered an approach entirely different from that customarily used in these cases. It was, in essence, grounded on an "image," if you will, in the minds of its own citizens and the world at large of a high class built-up residential community, with a quality local business district and

---

[1] There is at least one study which finds a correlation between billboards and traffic accidents. See Moore, "Regulation of Outdoor Advertising for Aesthetic Purposes," 8 *St. Louis L. J.* 191, 197 (1963). It does not take an expert to appreciate that street and highway signs of all kinds can be distracting—indeed, purposely so—to the motorist. But this evil is not confined to off-premises advertising. Every automobile driver knows that equal or worse offenders are highway on-premises signs and signs in central business districts which obscure or confuse traffic signals.

a relatively small industrial district (with commercial business also permitted) on one border, which it desires and plans to maintain and even up-grade. The thesis is that off-premises advertising signs are a jarring visual note and do not belong anywhere in such a picture. It is basically very different and much more frank than the old, stereotyped police power shibboleths which led this court in *United Advertising Corp. v. Borough of Raritan*, 11 *N. J.* 144 (1952) to justify billboard prohibition by simply saying abruptly: "It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction." (11 *N. J.*, at *p.* 150) and "It is enough that outdoor advertising has characteristic features which have long been decreed sufficient to sustain regulations or prohibitions peculiarly applicable to it." (11 *N. J.*, at *p.* 151).

In reality, as Metuchen's counsel conceded at oral argument, the thesis rests upon exercise of the police power, here through the medium of a zoning ordinance, for purely aesthetic reasons and purposes. The majority recognizes this to some extent, but seems unwilling to give it the exclusive effect which I think it can and should have in this particular situation. My colleagues dilute the concept by leaning upon the well accepted basis of economics, related to an alleged effect of off-premises signs upon the value of property throughout the municipality. *Cf. People v. Stover*, 12 *N. Y.* 2d 462, 240 *N. Y. S.* 2d 734, 191 *N. E.* 2d 272 (*Ct. App.* 1963), commented upon in "Zoning, Aesthetics, and the First Amendment," 64 *Colum. L. Rev.* 81 (1964). I strongly doubt that the reliance is factually sound or a meaningful crutch in the situation before us. Effect upon property values in any zoning district seems negatived by the parties' stipulation. But even if it is not, I find it impossible to think that a billboard in the manufacturing district can have any dollar effect on the value of a dwelling in a residential zone.

It seems to me that courts ought to face up to realities squarely and begin to give frank recognition to aesthetics as an appropriate basis in some areas for exercise of the police power to attain proper community objectives. See Dukeminier, "Zoning for Aesthetic Objectives: A Reappraisal," 20 *Law and Contemporary Problems* 218 (1955). While this has actually been done for a considerable time, judicial opinions generally expound some other reason. Many police power regulations are upheld where the true but unexpressed basis is that the activity or condition is considered by practically everyone to be an eyesore or offensive to some other sense. Many zoning regulations actually rest on aesthetic considerations, such as those prescribing suburban residential setback and yard distances.

The concept is admittedly a most difficult one to put into fair practice. Beauty and taste are almost impossible to legislate affirmatively on any very broad scale because they are generally such subjective and individual things, not easily susceptible of objective, non-arbitrary standards. See *Vickers v. Township Committee of Gloucester Township,* 37 *N. J.* 232, dissenting opinion, at *p. 269* (1962). But that does not mean that they cannot be judicially recognized in some situations as proper community objectives. It would seem that the approach could validly be made and legislation sustained squarely on this basis at least with respect to the prohibition or strict regulation of those activities or conditions which a court can find that practically everyone agrees are non-beautiful in their particular environment, so long as more important values are not overridden. Junkyards and automobile graveyards, except in a special setting, come to mind as instances. (They are prohibited by the Metuchen zoning ordinance.) See *e. g., Jasper v. Commonwealth,* 375 *S. W. 2d* 709 (*Ky. Ct. App.* 1964); but *cf. Delawanna Iron and Metal Co. v. Albrecht,* 9 *N. J.* 424 (1952); *Pfister v. Municipal Council of Clifton,* 133 *N. J. L.* 148 (*Sup. Ct.* 1945). And I think a court can properly say that we have reached that point with respect to outdoor advertising signs in many

settings. The saturation of so much of the landscape with signs, both those with changing faces which plaintiff erects and those of all sizes and kinds conveying a permanent message, has caused a very widespread public revulsion because of their ugliness and marring effect. *Blake, God's Own Junkyard* 11–16 (1964). The situation has become one of the "concepts of congruity held so widely," as the majority puts it. Since zoning and other local police power exercise in this state is confined by muncipal boundaries, the predominant character of Metuchen seems to me to justify the prohibition of off-premises advertising signs throughout the borough for aesthetic reasons, and we ought to frankly put the conclusion on that ground. Whether similar action would be justified in other types of communities, as for example, in a large city with many heavy industrial uses, must await another day.

This leads to my point of difference with the result reached by the majority. The true basis for prohibition being aesthetics, the concept must extend to all similar situations and should be reasonably applied to on-premise signs as well. If not, the municipality is guilty of unfair, unequal and unreasonable treatment which would invalidate the off-premises prohibition. And that is the difficulty I find with the Metuchen scheme.

Granted that an owner or operator of a business or a factory, whether it be on Main Street or in an outlying highway area, is entitled to identify his enterprise and seek to attract customers or generate good-will and that the aesthetically minded municipality must accordingly put up with some non-aesthetic conditions, it seems to me that the local businessman cannot have an unlimited right to put up signs without commensurate limitation. I cannot find any such right simply because the sign relates to the business and, whatever the privilege should be called, it should not be denominated an accessory use or given nonconforming use protection (and indeed even off-premises signs do not seem to me a sufficient land use to be entitled to that protection). It is common knowledge that on-premises signs are frequently

just as ugly and offensive as conventional billboards, if not even more garish. Photographs in evidence in this case illustrate that such conditions do exist to some degree in the business districts of Metuchen.

I cannot read *United Advertising Corp. v. Borough of Rarilan, supra,* 11 *N. J.* 144 to sanction unrestricted on-premises signs if those off-premises are prohibited, as the majority appears to. The court was careful to point out that the on-premises right was "subject to *reasonable* regulations" and went on to detail the restrictions in that ordinance which it characterized with the statement "that the municipality has *strictly regulated* all signs to confine their use to the *reasonable requirements* of signs incident to and part of businesses authorized on the premises." 11 *N. J.,* at *pp.* 150, 151 (emphasis supplied).

Courts elsewhere have gone both ways on the question. Some, like *Metromedia, Inc. v. City of Pasadena,* 30 *Cal. Rptr.* 731 (*D. Ct. App.* 1963), appeal dismissed for want of a substantial federal question, 84 *S. Ct.* 636 (1964), sanction practically unlimited distinct treatment simply because on-premises signs relate to the business conducted at the site. Others forbid, and I think soundly, unreasonable discrimination. An example is *Sunad, Inc. v. City of Sarasota,* 122 *So. 2d* 611 (*Fla. Sup. Ct.* 1960). There the court said:

> "Bearing in mind that aesthetics is the criterion by which the merits of the ordinance should be judged, we find insurmountable difficulty to a decision that a wall sign 300 square feet in size at non-point [*sic*] of sale would not offend while a sign of the same size on one of petitioner's billboards would, or that an unrestricted wall sign, at point of sale, would be inoffensive but one of petitioner's signs would shock refined senses, or for that matter, that a roof, ground, or other sign could be only 180 square feet while a wall sign could be at least 300 square feet and, if at point of sale, unlimited." (122 *So. 2d,* at *pp.* 614–615)

While the Metuchen ordinance purports to restrict on-premises signs, in my opinion the regulation is so illusory in fact that it goes beyond the bounds of reasonable differentiation when off-premises signs are prohibited on the basis of

14

aesthetics. While the square foot *size of single signs* in the business district is confined to 100 square feet, the *number* of such signs on one property is limited only by the front footage of the lot. For example, in the B-2 district, an enterprise on a 100-foot lot can have 1,000 square feet of advertising sign space, with any number of signs in any place thereon, so long as no single sign is larger than 100 square feet. In the manufacturing district, if the property (and it may be a commercial as well as an industrial use) has a 300-foot frontage, it may maintain 4,500 square feet of advertising space made up of any number of signs. Any sign may be as large as plaintiff's 300-square-foot billboards and erected anywhere on the premises so long as the top does not project higher than the maximum permissible height of principal structures in the district. It is obvious that there is substantially no recognition of aesthetics in these regulations and I feel strongly that such recognition must be given where aesthetics is the basis to exclude billboards. Compare the restrictions imposed by the *Raritan* ordinance. 11 *N. J.*, at *pp.* 151–152. I cannot but conclude that there is consequently such unreasonable leniency as to on-premises signs in Metuchen that, as the ordinance provisions now stand, complete prohibition of off-premises signs cannot be justified. It is no answer that the municipality can change the ordinance if actual installations of on-premises devices get out of hand. That thought affords no legal warrant for present unreasonable discrimination. Moreover, it is well known that, as a practical matter, it is most difficult to tighten restrictions which affect enterprises operated by substantial taxpayers or local residents.

I therefore believe that the prohibitory provisions of the Metuchen ordinance are invalid and so would reverse the judgment of the trial court and decide in favor of plaintiff. I would, however, not give this determination effect for a reasonable period of time in order that the municipality might have an opportunity, if it so desired, to make the on-premises regulations appropriately stricter so that thereby off-premises prohibition would become valid. See *Morris*

*County Land Improvement Co. v. Township of Parsippany-Troy Hills,* 40 *N. J.* 539, 559 (1963).

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For reversal*—Justice HALL—1.