**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4922-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DONNELL S. PERRY,

    Defendant-Appellant.

_____

        Submitted July 3, 2018 — Decided August 13, 2018

        Before Judges O'Connor and Moynihan.

        On appeal from Superior Court of New Jersey,
        Law Division, Mercer County, Indictment No.
        16-02-0138.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Cody T. Mason, Assistant Deputy
        Public Defender, of counsel and on the brief).

        Angelo J. Onofri, Mercer County Prosecutor,
        attorney for respondent (Olivia M. Mills,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

Defendant Donnell S. Perry appeals his conviction for second-degree robbery as an accomplice, N.J.S.A. 2C:15-1(a)(1) and 2C:2-6(a) (count one, amended from a first-degree robbery), contending:

POINT I

THE MOTION TO SUPPRESS IDENTIFICATIONS SHOULD HAVE BEEN GRANTED BECAUSE THE INCLUSION OF DEFENDANT'S PICTURE IN TWO ARRAYS WHERE HE WAS THE ONLY PERSON WITH A FACE MARK OR TATTOO, COUPLED WITH OTHER FACTORS, CREATED AN IRREPARABLE RISK OF MISTAKEN IDENTIFICATION.

A. THE IDENTIFICATION PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE BECAUSE THE WITNESS WAS SHOWN TWO ARRAYS IN WHICH DEFENDANT WAS THE ONLY PERSON WITH VISIBLE FACE MARKINGS OR TATTOOS.

B. THE SUGGESTIVENESS OF THE IDENTIFICATION COULD NOT BE CURED BY THE WITNESS'S LIMITED AND VAGUE PRIOR INTERACTIONS WITH THE SUSPECT, PARTICULARLY GIVEN THE CROSS-RACIAL NATURE OF THE IDENTIFICATION AND THE WITNESS'S DRUG USE.

POINT II

THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT DID NOT ADEQUATELY EXPLAIN ITS FINDINGS OF AGGRAVATING FACTORS THREE AND NINE, AND DID NOT HOLD A HEARING REGARDING THE IMPOSITION OF RESTITUTION.

A. A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE COURT DID NOT EXPLAIN ITS FINDINGS OF AGGRAVATING FACTORS THREE AND NINE.

B. A REMAND IS REQUIRED BECAUSE THE COURT IMPOSED $300 IN RESTITUTION WITHOUT HOLDING A HEARING TO DETERMINE THE EXTENT OF

                    DAMAGES  OR  DEFENDANT'S  ABILITY  TO  PAY
                    RESTITUTION.

We agree defendant's motion to suppress the identification of his photograph — the only one showing facial tattoos — should have been granted, and reverse.

Following a Wade[1] hearing the trial court judge admitted Eric Hewitt's identification of defendant from a photo array — conceded by the State to have been suggestive because defendant's was the only photograph in which facial tattoos were depicted — finding it "reliable."  The judge credited the testimony of both Hewitt and the detective who compiled the array, and determined Hewitt's prior encounters with defendant on five to eight occasions over a three to four week period — during which defendant drove in Hewitt's car and once played cards with Hewitt — provided "sufficient knowledge of both the physical characteristics of the defendant to [enable Hewitt] to identify him in a photo array even if that photo array [was] somewhat suggestive."

"Our standard of review on a motion to bar an out-of-court-identification . . . is no different from our review of a trial court's findings in any non-jury case." State v. Wright, 444 N.J. Super. 347, 356 (App. Div. 2016) (citing State v. Johnson, 42 N.J.

---

[1] United States v. Wade, 388 U.S. 218 (1967).

146, 161 (1964)). "We are bound to uphold a trial court's factual findings in a motion to suppress provided those 'findings are supported by sufficient credible evidence in the record.'" State v. Watts, 223 N.J. 503, 516 (2015) (quoting State v. Elders, 192 N.J. 224, 243-44 (2007)). "Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gonzalez, 227 N.J. 77, 101 (2016) (quoting Johnson, 42 N.J. at 161). A "trial court's findings at the hearing on the [reliability and] admissibility of identification evidence are 'entitled to very considerable weight.'" State v. Adams, 194 N.J. 186, 203 (2008) (quoting State v. Farrow, 61 N.J. 434, 451 (1972)). However, we do not defer to a trial court's interpretation of the law, which is reviewed de novo. State v. Shaw, 213 N.J. 398, 411 (2012).

The judge rejected defendant's contentions that, besides the suggestive construction of the photo arrays — a system variable[2]

_____

[2] System variables are factors "within the control of the criminal justice system." State v. Henderson, 208 N.J. 208, 218 (2011). They are: (1) whether a detective uninvolved in the investigation — a "blind" administrator — was used; (2) whether pre-identification instructions were given to the witness; (3) whether the array was constructed of a sufficient number of fillers that look like the suspect; (4) whether the witness was given feedback

A-4922-16T3

— the estimator variables[3] of lighting, physical features and cross-racial identification rendered the identification unreliable. Countering defendant's argument about lighting, the judge found that although some encounters may have taken place after dark, Hewitt also viewed defendant during daylight hours. Considering defendant's contention he was identified because his was the only photograph in which tattoos were depicted, the judge compared the arrays viewed by Hewitt. The judge noted defendant's picture in the first array — which Hewitt did not select — "looks like there is some marking but I can't tell by my view of the picture whether that's something beyond a tattoo." He found the photo in the second array was "more definitive insofar as the

_____

either during or after the procedure; (5) whether the witness was exposed to multiple viewings of the suspect; (6) whether the lineup was presented sequentially versus simultaneously; (7) whether a composite sketch was used; (8) whether the procedure was a show-up where "a single suspect is presented to a witness to make an identification." Id. at 248-61.

[3] "[E]stimator variables are factors beyond the control of the criminal justice system," id. at 261, and include: (1) the witness's stress level; (2) whether a visible weapon was used during the crime; (3) the amount of time the witness viewed the suspect; (4) the lighting and the witness's distance from the perpetrator; (5) the witness's age and level of intoxication; (6) whether the perpetrator wore a disguise or changed physical features; (7) the amount of time that passed between the crime and the identification; (8) whether the witness and perpetrator were of different races; (9) whether the witness was exposed to co-witness feedback; and (10) the speed with which the witness made the identification, id. at 261-72.

tattoos that are visible on . . . defendant's face." The judge concluded, "the characteristics are somewhat unique in the sense that this individual does have facial tattoos which was clearly in the mind of Mr. Hewitt at the time not only during the time that he had, quote, befriended him but also at the time that he was viewing the arrays." In addressing defendant's point that defendant and Hewitt were of different races, the judge concluded it was a non-issue because Hewitt "befriended the defendant for a given period of time for perhaps his own personal reasons but it does not appear that race plays any factor insofar as the identification procedure is concerned."

The evidence does not support a finding that the identification of defendant's photograph was based on anything but the tattoos, which only the defendant's picture included. See State v. Henderson, 208 N.J. 208, 251 (2011) (adopting the findings of the Henderson Special Master, the Court recognized "mistaken identifications are more likely to occur when the suspect stands out from other members of a . . . photo lineup").

As the judge found, defendant's tattoos were more visible in the second-array photograph selected by Hewitt. Hewitt said he did not select defendant's photograph from the first array because "[defendant] had hair and [the photograph was taken] before he had tattoos on him." Indeed, Hewitt said his memory of

defendant, formed from his contact with defendant during the weeks prior to the identification, was that "at the time he was bald and he had tattoos, he had teardrops and tattoos on his eyelids."[4] Hewitt said that when he was shown the updated photograph of defendant — which he identified — "he had tattoos, that's when I noticed." When asked, "When you [identified] the photographs during the second array, was it important to you that you could see tattoos on his eyelids," Hewitt answered affirmatively. Because the second-array photograph depicted defendant with hair, the only features previously described by Hewitt that matched the photograph were defendant's tattoos. Notwithstanding Hewitt's response to the prosecutor's leading question denying that he selected defendant's photograph "because the guy had tattoos on his face," Hewitt's only pertinent memory of the perpetrator was of the tattoos. Tellingly, he based his in-court identification of defendant during the Wade hearing on his ability to "see the teardrops right here and his eyelids"; when asked if he was sure, he asked, "Can he close his eyes?"

We also determine the trial judge improperly applied the race bias variable which was not dependent on Hewitt's subjective racial views, but on the research showing that "[c]ross-racial

---

[4] In his previous description of the perpetrator, Hewitt said that he forgot if he was bald or had "a little bit of hair."

recognition continues to be a factor that can affect the reliability of an identification." Id. at 267.

We do not set aside the judge's findings and conclusions lightly. The record, however, does not sufficiently support the reliability of the identification. Had the array included photographs similar to that of defendant, Hewitt's prior encounters with defendant may have buttressed the reliability of his selection. We are constrained, however, to reverse the motion to suppress the identification as defendant has proved "a substantial likelihood of irreparable misidentification." Id. at 289.

In light of our decision, we need not address defendant's sentencing argument.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4922-16T3