LAURA NAPIERKOWSKI, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF GLOUCESTER, DEFENDANT-APPELLANT.

Argued March 3, 1959—Decided April 20, 1959.

*Mr. Meyer L. Sakin* argued the cause for the defendant-appellant.

*Mr. Milford Salny* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

BURLING, J.   This is a proceeding in lieu of prerogative writ attacking certain ordinances of the Township of Gloucester, County of Camden, at least insofar as those ordinances are designed to prohibit plaintiff from maintaining and utilizing · a trailer-home on her lot, located in the township.

The Superior Court, Law Division, after hearings, entered a judgment in favor of the plaintiff, and the township prosecuted an appeal to the Superior Court, Appellate Division.   While the cause was pending · there, and prior to argument, we certified it on our own motion.

Plaintiff's lot is approximately four acres in size and was purchased by her in 1946.   Her residence at the time of commencement of the instant proceedings was in Philadelphia, Pennsylvania.

In March 1957 plaintiff purchased a house trailer or mobile home, intending to place it on her lot for use as a permanent residence by herself and her husband.   Several days after purchasing the trailer plaintiff orally inquired of the township clerk whether she might place a trailer on her lot and was informed that she could not.   The township had in 1947 enacted an ordinance entitled "An Ordinance defining trailers or camp cars and prohibiting the parking and placing of the same within the limits of the Township of Gloucester, in the County of Camden and State of New Jersey."   The unmistakable import of the

1947 trailer ordinance was to prohibit the use of trailers for residential purposes within the township.

Plaintiff thereupon informed the vendor of the trailer of the fact that she was unable to locate the trailer in the township. By letter dated April 29, 1957 the trailer vendor's attorney wrote to the township's solicitor advising that in his opinion the 1947 trailer ordinance was inapplicable to plaintiff since section 1 of that ordinance defined a trailer "to be a vehicle * * * designed to permit the occupancy thereof as a dwelling or sleeping place for one or more persons and having no foundation other than wheels, jacks or skirtings so arranged as to be integral with or portable by said trailer or camp car," whereas plaintiff proposed to place her trailer on a concrete foundation. The township committee, at its May 6, 1957 meeting, was informed of counsel's contention but rejected it, since it was the committee's belief that the ordinance prohibited any use of a trailer as living quarters.

Thereafter plaintiff was represented by her present attorney. There followed a course of negotiations between plaintiff's attorney and the township which failed to reach any accord. On July 15, 1957 plaintiff commenced the instant in lieu proceeding. The complaint alleged that the 1947 trailer ordinance was unconstitutional. The township, in its answer, further alleged that plaintiff's proposed location of the trailer would violate the township's zoning ordinance.

The township zoning ordinance was passed on first reading on May 20, 1957; was amended and passed on second reading on June 17, 1957 and was adopted on July 1, 1957. Under its terms plaintiff's land is located in an "A" Residence District. Section 500 provides:

"500. In all "A" Residence Districts the following uses (and no others) of lands and buildings are permitted.
*     *     *     *     *     *     *     *
(2) One family detached dwelling.
*     *     *     *     *     *     *     *."

Section 502, relating to bulk restrictions in "A" Residence Districts, provides in part:

"(2) No building shall have usable first floor area of less than 800 square feet, except in the case of the type of building known as 'split level.' * * *"

Plaintiff's trailer has a floor area of 500 square feet.

The zoning ordinance further permits dwellings to be located in the industrial zone provided that such dwellings conform to the limitations of "A" Residence Districts and provided further that prior approval of the board of adjustment is obtained.

On September 3, 1957 the township adopted a second trailer ordinance. This ordinance expressly repealed all inconsistent provisions of the prior ordinance. The 1957 trailer ordinance is entitled: "An ordinance to regulate and control trailer, trailer coaches, camp cars and trailer camps in the Township of Gloucester." Trailer is defined as:

"any unit used for living, sleeping, or business purposes, by one or more persons, which is equipped with wheels or similar devices used for the purpose of transporting said unit from place to place, whether it be self-propelled or otherwise."

Trailer camp is defined as:

"any place, area, lot, or tract of land upon which is located any Trailer * * *."

Section 3 of the ordinance then provides:

"No person * * * owning * * * any trailer shall locate, park, keep, or maintain said trailer upon any lot or tract of land within the Township of Gloucester, except upon a trailer camp conducted, maintained, and licensed in full and complete compliance with all the provisions of this Ordinance."

There follows a comprehensive scheme for the regulation of trailer camps within the township, including provisions for adequate drainage, light and air, traffic congestion, water supply, sewerage facilities, lavatory facilities, collection of

garbage and waste materials and sufficient lighting of common facilities.

It is further provided that:

"Every trailer camp shall be established and located in compliance with any Zoning Ordinance which is or shall become in force in the Township of Gloucester, and/or any revision or amendment thereof."

The 1957 trailer ordinance further makes provision for the licensing of trailer camps and for the procedure to obtain a license. The ordinance requires an annual license fee of $200 per year and an additional fee of $1 per calendar week or part thereof for each trailer. And each licensee is further required to maintain a camp register setting forth "the license number of the trailer, the serial, type and license number of each automobile, the date of arrival, whether still at the camp and if not the date of departure, and the age, name and last permanent address of the owner of each trailer and automobile and of each occupant thereof," copies of which are to be sent each week to the township clerk, the chief of the police department and the township tax collector.

Plaintiff was granted leave to file a supplemental complaint challenging the validity of the 1957 trailer ordinance as applied to her. The township's answer to the supplemental complaint charged that plaintiff's proposed use of her property was in violation of the trailer ordinances of 1947 and 1957 and the zoning ordinance and further, for the first time, alleged violation of the township's building code enacted in 1946, and last amended in 1956. The township building code requires the procurement of a building permit for all construction in excess of $50 and further sets forth specifications concerning dimensions and materials which plaintiff's trailer does not and cannot meet.

The building code ordinance does not specifically refer to "trailers" but rather to "buildings" or "dwellings."

It appears that plaintiff never formally applied for either a building permit or a variance prior to commencing suit.

The trial court, after viewing the premises, found that the immediate locale of·plaintiff's property was mainly rural in characteristic. The court concluded that the area was not, in its present stage of development a residential area, nor would it be so within the reasonably foreseeable future and that therefore the township could not prohibit plaintiff from placing the trailer on her lot. More particularly the court adjudged: (1) that the 1947 trailer ordinance is unconstitutional, null and void in its entirety; (2) that the 1957 trailer ordinance is unconstitutional, null and void insofar as it purports to regulate or prohibit plaintiff's use of a trailer on her lands; (3) that the building code ordinance has no application to regulate or prohibit plaintiff's use of a trailer on her lot and (4) that the zoning ordinance, to the extent that it purports to regulate or prohibit plaintiff's use of a trailer on her lands for dwelling purposes, is unconstitutional and invalid.

Initially, we deal with two procedural questions raised by the township. The township maintains that the suit is out of time since it was not commenced within 45 days of the accrual of the right to review under *R. R.* 4:88–15. It is asserted that the time period herein was triggered on May 6, 1957 when the township solicitor advised the trailer vendor's attorney that the township committee had denied plaintiff's right to maintain a trailer on her property. (Suit was instituted on July 17, 1957.) However, the letter of denial was followed by a course of further negotiation between plaintiff's present attorney and the township solicitor lasting until at least June 13, 1957. Moreover, plaintiff has challenged the constitutionality of the various township ordinances. Under the principles recently enunciated by this court in *Schack v. Trimble,* 28 *N. J.* 40, 45–51 (1958), we conclude that the interests of justice require that plaintiff be afforded a right to judicial review.

Secondly, the township maintains that since plaintiff is attacking the zoning ordinance as being arbitrary and

unreasonable in its application to plaintiff's proposed use of her property, and is not attacking the ordinance in its entirety, she is precluded from making a direct attack upon the ordinances. Our decisions have generally recognized that the prudent procedural course is ordinarily to require the owner of property to first exhaust his remedy of a variance before the local authorities. *Conlon v. Bd. of Public Works, Paterson,* 11 *N. J.* 363, 369–370 (1953) ; see *Fanale v. Hasbrouck Heights,* 26 *N. J.* 320, 324 (1958) ; *Kozesnik v. Montgomery Twp.,* 24 *N. J.* 154, 183 (1957) ; *Fischer v. Twp. of Bedminster,* 11 *N. J.* 194, 205–206 (1952). The reason is that:

"When the owner succeeds, by direct attack, in annihilating the zoning ordinance as to his property, the consequences to the general zoning plan may, of course, be more damaging than a change of zone, since the property is then subject to no restrictions whatever. * * * The owner is not prejudiced by the requirement that he first exhaust his remedy before the local board since he may have a judicial determination of his contention that the regulation is arbitrary in its application to his land upon review of the action of the local board if he is aggrieved thereby." *Conlon v. Bd. of Public Works, Paterson, supra,* 11 *N. J.* at *page* 370.

However, the exhaustion principle is modified where it is reasonably apparent that resort to administrative processes would be a fruitless effort. See *Honigfeld v. Byrnes,* 14 *N. J.* 600 (1954) ; *Kotlarich v. Ramsey,* 51 *N. J. Super.* 520, 539 (*App. Div.* 1958).

In the present case, the attitude of the township governing body was such that to require plaintiff to first request a variance before seeking judicial relief would be to require an obviously futile gesture.

We proceed to a consideration of the merits.

Initially, we might note that the 1957 trailer ordinance has, at least insofar as we are presently concerned, repealed the prior 1947 trailer ordinance. In our view, the basic questions for decision are: (1) whether the ordinances prohibit the maintenance and use of trailers within residen-

tial zones; (2) whether such a prohibition is, under the circumstances of this case, a reasonable exercise of either the zoning power or of the general police power.

## I.

While the functional purpose of trailers is to provide a place in which to live, they present problems quite distinct from those traditionally dealt with by zoning ordinances dealing with houses or dwellings. Trailers are *sui generis* and unless the particular local ordinance expressly makes reference to them courts have often been forced to adopt a somewhat mechanistic and juridically inadequate approach to the problem. Thus, the basic question of whether the local ordinance permits or prohibits trailers in a particular locale is generally cast in terms of whether a trailer is or is not a dwelling or house under the particular local ordinance. The cases on the question are in hopeless disaccord in rationale, although generally the result has been to prohibit trailers. For example, the following cases hold that a trailer is a dwelling or building within the meaning of those terms as utilized within local zoning or building code ordinances and hence its use is prohibited: *Corning v. Town of Ontario,* 204 *Misc.* 38, 121 *N. Y. S.* 2d 288 (*Sup. Ct.* 1953); *Commonwealth v. McLaughlin,* 168 *Pa. Super.* 442, 78 *A.* 2d 880 (*Super. Ct.* 1951); *Kimsey v. City of Rome,* 84 *Ga. App.* 671, 67 *S. E.* 2d 206 (*Ct. App.* 1951); *Lower Merion Tp. v. Gallup,* 158 *Pa. Super.* 572, 46 *A.* 2d 35 (*Super. Ct.* 1946), appeal dismissed *sub. nom. Gallup v. Tp. of Lower Merion,* 329 *U. S.* 669, 67 *S. Ct.* 92, 91 *L. Ed.* 591 (1946). For example, the following cases hold a trailer is not a dwelling or building and therefore is prohibited under the provisions of local ordinances: *Town of Marblehead v. Gilbert,* 334 *Mass.* 602, 137 *N. E.* 2d 921 (*Sup. Jud. Ct.* 1956); *City of New Orleans v. Louviere,* 52 *So.* 2d 751 (*La. Ct. App.* 1951); *Cf. Michaels v. Township of Pemberton,* 3 *N. J. Super.* 523 (*Law Div.* 1949).

For example, the following cases hold a trailer is not a dwelling or building and is therefore permitted under the provisions of local ordinances: *In re Willey*, 120 *Vt.* 359, 140 *A. 2d* 11 (*Vt. Sup. Ct.* 1958); *Brodnick v. Munger*, 102 *N. E. 2d* 48 (*Ohio C. P.* 1951) affirmed *per curiam* 111 *N. E. 2d* 695 (*Ohio Ct. App.* 1952).

In the instant case it is unnecessary to determine whether a trailer is a dwelling or other use within the purview of the zoning law. That question has implications which may well await a case in which a determination is required. Involved are subsidiary questions whether such use may be a nonconforming one and thus protected by the zoning statute, and whether an ordinance barring trailers from all or a portion of the municipality must be adopted in accordance with the statutory procedures applicable to zoning ordinances or amendments thereof or whether it is rather an exercise of the general police power granted by *R. S.* 40:48–2. It is unnecessary to decide the question thus reserved because the prohibition here sought to be achieved must be sustained whether the approach be an exercise of either the zoning or the general police power.

The zoning ordinance was unquestionably designed to prohibit the use of trailers in residence districts. It is so framed that this result would obtain irrespective of the answer to the question of whether a trailer is or is not a dwelling within the meaning of that term as utilized in the ordinance. To indicate this: if a trailer is held to be a "dwelling" then it would be extremely impractical for any trailer to comply with the requirement that it have usable floor area of 800 square feet. And, of course, in the application of the ordinance so construed to the facts at hand there is not compliance since plaintiff's trailer has a floor area of 500 square feet. If, on the other hand, the answer to the question be that a trailer is not a dwelling, then it is excluded on the basis that only a "one family detached dwelling" is permissible in the "A" residence district.

The intendment to prohibit trailers from residence districts is clear, and thus viewed the question of whether a trailer is a dwelling is purely academic and does not currently call for a solution.

The further question upon the zoning approach is whether, under the circumstances of this case, the zoning ordinance, which, as construed, prohibits the maintenance and use of trailers on plaintiff's lot, bears a reasonable relationship to the purposes which zoning is intended to promote, bearing in mind, as we must, that the local ordinance is presumptively valid and that plaintiff must make a clear showing that it is arbitrary or unreasonable before it will be set aside by the courts. *Schmidt v. Board of Adjustment of City of Newark*, 9 *N. J.* 405, 416 (1952); *Yanow v. Seven Oaks Park, Inc.*, 11 *N. J.* 341, 360 (1953); *Kozesnik v. Montgomery Township*, 24 *N. J.* 154, 167 (1957); *Fanale v. Borough of Hasbrouck Heights*, 26 *N. J.* 320 (1958).

As we noted, the use of trailers as permanent residences presents problems which are in some aspects unique from the problems traditionally dealt with by zoning legislation. In *Zullo v. Board of Health, Woodbridge Tp.*, 9 *N. J.* 431, 436 (1952), Mr. Chief Justice Vanderbilt recognized that

"Trailer camps, because of their particular nature and relation to the public health, safety, morals and general welfare, have frequently been the subject of special regulation by appropriate local governing bodies, see *Edwards v. Mayor, etc. of Borough of Moonachie*, 3 *N. J.* 17 (1949); *Michaels v. Tp. Committee of the Tp. of Pemberton*, 3 *N. J. Super.* 523 (1949); *Annotation*, 22 *A. L. R.* 2d 774–802 (1952)."

As a consequence many local ordinances have, in effect, totally prohibited the use of trailers as permanent residences. And these attempts, for the most part, have been upheld by the courts. For instance, local ordinances have frequently provided that although trailers may be utilized as transient or temporary abodes, they may not locate within the municipality for more than a stated period of time. See

e. g., *Cady v. City of Detroit,* 289 *Mich.* 499, 286 *N. W.* 805 (*Sup. Ct.* 1939), appeal dismissed 309 *U. S.* 620, 60 *S. Ct.* 470, 84 *L. Ed.* 984 (1940) (90 days in any one year); *Renker v. Village of Brooklyn,* 139 *Ohio St.* 484, 40 *N. E.* 2d 925 (*Sup. Ct.* 1942) (60 days); *Gillam v. Board of Health of Saugus,* 327 *Mass.* 621, 100 *N. E.* 2d 687 (*Sup. Jud. Ct.* 1951) (90 days in any six months); *Lower Merion Tp. v. Gallup, supra; Town of Southport v. Ross,* 284 *App. Div.* 598, 132 *N. Y. S.* 2d 390 (*App. Div.* 1954) (four weeks per year) and see *Stary v. City of Brooklyn,* 162 *Ohio St.* 120, 121 *N. E.* 2d 11 (*Sup. Ct.* 1954), appeal dismissed 348 *U. S.* 923, 75 *S. Ct.* 338, 99 *L. Ed.* 724 (1955), where the court, after reviewing the evidence adduced to demonstrate that modern trailers are far superior to pre-war trailers, refused to depart from the principles it had enunciated in the *Renker* case, *supra.* For further authorities see *Annotation,* 22 *A. L. R.* 2d 774, 799 (1952).

Total prohibition has also been effectuated in some instances by the application to trailers of building code provisions which trailers admittedly could not comply with. See *e. g., People v. Lederle,* 206 *Misc.* 244, 132 *N. Y. S.* 2d 693 (*City Ct. Sp. Sess.* 1954), affirmed 309 *N. Y.* 866, 131 *N. E.* 2d 284 (*Ct. App.* 1955), and see cases cited previously in this opinion dealing with the question of whether a trailer is or is not a dwelling within the meaning of local zoning or building code ordinances. Compare, *Davis v. McPherson,* 132 *N. E.* 2d 626 (*Ohio Ct. App.* 1955) and *Carlton v. Riddell,* 132 *N. E.* 2d 772 (*Ohio Ct. App.* 1955), upholding zoning ordinances which totally prohibited establishment of trailer parks in the municipality. But *cf. Gust v. Township of Canton,* 342 *Mich.* 436, 76 *N. W.* 2d 772 (*Sup. Ct.* 1955).

The decisions elsewhere highlight the fact that the use of trailers as permanent residences present problems which are ofttimes inimical to the general welfare. In addition to the obvious health and safety hazards there are other considerations which a municipality must take into account in

regulating the use of trailers. Two of the basic concepts of sound zoning, encouragement of the most appropriate use of land and conservation of property values, may be undermined by the indiscriminate location of trailers within a municipality. There can be little doubt that the maintenance and use of a trailer in a particular locale would tend to stifle development of the area for residential purposes. And from the point of view of aesthetic considerations (which are inextricably intertwined with conservation of the value of property) trailers may mar the local landscape.

In our view, the refusal of the municipality to permit the isolated and interspersed maintenance and utilization of trailers on individual lots in residence districts is not an arbitrary and unreasonable exercise of the zoning power, even where, as here, the proposed location in its present state and, assuming *arguendo* that the trial court's prediction is accurate, the reasonably foreseeable future is rural and undeveloped.

Zoning must subserve the long-range needs of the future as well as the immediate needs of the present and the reasonably foreseeable future. It is, in short, an implementing tool of sound planning.

In the immediate locale of plaintiff's property the following facts appear:

Plaintiff's property fronts on the south side of Lower Landing Road. To the west is an overhead freeway. This new freeway provides quick and direct access to the City of Philadelphia via the Walt Whitman Bridge and to industry along the Delaware River. From plaintiff's property, proceeding along the most direct route (eastwardly along Lower Landing Road to Landing Road, then southeastwardly along Landing Road to the Black Horse Pike, then southwestwardly along the Black Horse Pike) it is only, from the map in evidence, approximately a mile and a half to an entrance to the freeway in the community of Blenheim. Eastwardly on Lower Landing Road from the freeway to the nearest intersecting road, Landing Road, the distance

is approximately a half mile. There are presently six homes on the south side of Lower Landing Road from the freeway to Landing Road and two or four homes (the record is not clear which) on the north side. Interspersed are level farm lands apparently well suited for development. The south side of the Lower Landing Road is zoned as residential and the north side as industrial. On the north side of Lower Landing Road there is located a storage building for fertilizer used as an adjunct to a farm. On Landing Road, south of Lower Landing Road for approximately one-third of a mile (measured by the map in evidence) there are some 15 to 20 homes, and in addition there are homes presently under construction. Going further eastwardly along Lower Landing Road, at approximately a mile and a quarter from plaintiff's lot, the road intersects with the Black Horse Pike, one of the major traffic arteries in South Jersey leading to the Benjamin Franklin Bridge.

Immediately west of the freeway, Lower Landing Road turns southwardly at an angle of approximately 100 degrees. Approximately one-third of a mile further southwardly down Lower Landing Road on the east side there is a further residential development of some 15 to 20 homes. On the west side of the Lower Landing Road, just past the freeway there is a tract of land which has been used for the excavation of gravel.

The record indicates that the township is growing rapidly. It was estimated by the township tax assessor that 1,400 new homes have been constructed in the township since 1950. Currently there are five real estate developments being constructed in the township which will contain a total of approximately 600 homes. These developments are within three to five miles of plaintiff's property. It should further be noted that there has existed in the township a planning board since 1953, and careful studies have been made of the land uses and development of the township.

We highlight these facts for the purpose of indicating that it was reasonable for the township officials to conclude that

there does exist a long-range potential for development of the locality in which plaintiff's property is located, and further, that such potential would be eliminated or stunted by permitting the use of a trailer as a permanent residence on an individual lot.

For the reasons advanced it is our view that the provisions of the zoning ordinance prohibiting the location of trailers in residence districts and placing plaintiff's lot in a residence district bears a reasonable relationship to the purposes of zoning as outlined in *R. S.* 40:55–32, and should be upheld.

## II.

We have thus far concluded that if it be assumed that the use of trailers as residences is within the zoning statute, the ordinance bars them from residential districts and is a valid exercise of the zoning power. We are equally satisfied that the municipality may bar such uses under its general police power. *R. S.* 40:48–2.

The circumstances already described and found sufficient for the zoning decision upon the hypothesis that the zoning power is involved are equally adequate for the same result if the subject be deemed to fall within the general police power.

Nor upon this approach is there any conflict with *R. S.* 40:52–1 and 2 which authorize a municipality to license and regulate "trailer camps." We agree that the licensing and regulatory power is limited to trailer camps and is not applicable to a trailer when used as a residence by the owner on a lot. See *Devine v. Mantua Twp.*, 28 *N. J. Super.* 299 (*Law Div.* 1952). But the grant of power thus to control trailer camps is not inconsistent with the existence of power to prohibit such use outside of an established and licensed camp. That is what the trailer ordinance of 1957 undertook to accomplish.

In our view prohibition of trailers as residences at other than duly licensed trailer parks or camps is a reason-

able exercise of the police power, designed to promote the general health, safety and welfare of the municipality by assuring that adequate provisions are made for drainage, sewerage facilities, water and lighting of trailers and operates to centralize and facilitate enforcement of the aforesaid requirements.

An examination of the authorities without this jurisdiction reveals that local ordinance provisions restricting trailers to licensed parks are common place, and have been upheld by the courts as reasonably adapted to promote the health, safety and general welfare of the community. *Davis v. City of Mobile*, 245 *Ala.* 80, 16 *So.* 2d 1 (*Sup. Ct.* 1943); *Cooper v. Sinclair*, 66 *So.* 2d 702 (*Fla. Sup. Ct.* 1953), cert. den. 346 *U. S.* 867, 74 *S. Ct.* 107, 98 *L. Ed.* 377 (1953); *Wyoming Tp. v. Herweyer*, 321 *Mich.* 611, 33 *N. W.* 2d 93 (*Sup. Ct.* 1948); *Hodes and Roberson, The Law of Mobile Homes, pp.* 36-37, 91-93 (1957); *Comment, "Regulation and Taxation of House Trailers,"* 22 *U. Chicago L. Rev.* 738, 739 (1955); *Rhyne, Municipal Law* 584 (1957).

Provisions for the utilization of trailers in licensed trailer parks as distinguished from the private lot of the trailer owner does not amount to total prohibition, but rather falls within the confines of reasonable regulation. We are cognizant of the fact that there presently are no trailer parks or camps within the township. The township is, however, not obligated to furnish trailer park facilities and so long as such parks are not totally prohibited we need not consider the question of whether the character of the township is such that even exclusion of trailer parks is permissible. See *Finn v. Wayne Tp.*, 53 *N. J. Super.* 405 (*App. Div.* 1959); *Connor v. West Bloomfield Tp.*, 207 *F.* 2d 482 (6 *Cir.* 1953).

Under the township zoning ordinance trailer parks would be permissible in the industrial districts in which lands may be used for "any lawful purpose" except certain enumerated noxious business enterprises.

The entire judgment appealed from is reversed and the cause is remanded for entry of a judgment in accordance with the views expressed in this opinion, resulting in prohibiting plaintiff from locating her trailer on her individual lot and further prohibiting plaintiff from locating a trailer within the confines of the township at a site other than a duly licensed trailer camp or park.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.

*For affirmance*—None.