126 N.J. Super. 460 (1974)
315 A.2d 424
GREGORY FARRELL AND MARY FARRELL, HIS WIFE, PLAINTIFFS,
v.
TOWNSHIP OF TEANECK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; GEORGE C. PETERSEN, BUILDING INSPECTOR OF THE TOWNSHIP OF TEANECK; AND THE MUNICIPAL COURT OF THE TOWNSHIP OF TEANECK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1974.
*461 Mr. Jay M. Niederman for plaintiffs (Messrs. Okin, Pressler & Shapiro, attorneys).
Mr. Jacob Schneider for defendants (Messrs. Schneider, Schneider & Behr, attorneys).
MONAGHAN, G.E., J.D.C., Temporarily Assigned.
This is a proceeding under the Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., and particularly, N.J.S.A. 2A:16-53, seeking adjudication of the partial unconstitutionality of the Teaneck zoning ordinances as it pertains to the nonuse of political signs in residential zones. The basic issue for determination by the court may be succinctly stated: May a municipality in the State of New Jersey enact and enforce an ordinance which proscribes the construction, use, maintenance and display of any and all political signs in residential zones?
Plaintiffs Gregory and Mary Farrell have been, at all times herein relevant, residents and taxpayers of the defendant Township of Teaneck. On October 15, 1972 these plaintiffs annexed to the second story of their Teaneck residence a political sign bearing the legend "McGovern-Schreiber  1972." Their purpose in so doing was to express their political beliefs with respect to the 1972 presidential campaign. Shortly thereafter, plaintiffs were served *462 with a summons and complaint in the Teaneck Municipal Court for alleged violation of Article V, section II, subsection (g) of the Teaneck zoning ordinance. This ordinance constitutes a total proscription of the construction, maintenance and display of political signs in residential zones. As a result of this municipal court proceeding, plaintiffs instituted suit in the Superior Court of New Jersey seeking a stay of the municipal court action and an adjudication of the unconstitutionality of this section of the Teaneck zoning law.
Article V, section II of the Teaneck zoning ordinance sets forth various types of permitted accessory uses and indicates that four types of signs are allowed in such residential zones: (1) name plates; (2) "For Sale" or "For Rent" signs; (3) identification signs for churches, schools or other public buildings, and (4) signs identifying home professional offices. Each of these permitted accessory uses is subject to various limitations as to size, shape, construction, etc. Because no express authorization is included for signs expressing political or other points of view, this ordinance in effect constitutes an absolute and total prohibition of such signs within residential districts.
It is the defendant township's position that this ordinance is based on a well established, long history of concern in preserving property rights and concern for aesthetic values, and as such strikes a fair balance between these considerations and First Amendment rights. Although it is a generally accepted fact that the value of property is unextricably intertwined with aesthetic considerations, Napierkowski v. Gloucester Tp., 29 N.J. 481 (1959), we cannot assume that every tasteless choice of paint color or inartistic gardening effort results in a decrease in property values. Defendant failed to demonstrate to what degree, if at all, an ordinance which allowed a restricted type of sign for a limited period prior to elections would precipitate a decline in property values. In the absence of evidence indicating a possible effect on property values we must limit our examination to a consideration of the sufficiency of aesthetics *463 as a proper basis for the prohibition created by the ordinance, and whether the restrictions are reasonable in light of the end intended.
There is a growing tendency in New Jersey to give more weight to aesthetic considerations in cases challenging the validity of ordinances prohibiting or regulating billboards, signs and connected activities. This has grown out of an awareness of the effect on the general welfare and community well-being which a well planned and aesthetically pleasing environment can have. New Jersey courts have for many years considered the aesthetic factors in determining the reasonableness of zoning ordinances. Point Pleasant Beach v. Point Pleasant Pavilion, 3 N.J. Super. 222 (App. Div. 1949); Vickers v. Gloucester Tp. Comm., 37 N.J. 232 (1962); Napierkowski v. Gloucester Tp., 29 N.J. 481 (1959).
Today, New Jersey allows a consideration of aesthetics in conjunction with other factors. It has provided at least a part of the impetus for the formulation of ordinances controlling the following activities: prohibiting outdoor signs other than those related to business conducted on the premises, United Advertising Corp. v. Raritan, 11 N.J. 144 (1952); United Advertising Corp. v. Metuchen, 42 N.J. 1 (1964); prohibiting trailers from being parked in certain areas for aesthetic reasons, Napierkowski v. Gloucester Tp., 29 N.J. 481 (1959); Livingston Tp. v. Marchev, 85 N.J. Super. 428 (App. Div. 1964), certif. den. 44 N.J. 412 (1964); prohibition of front yard fences over a certain height (safety and beauty), Klotz v. Englewood Cliffs Bd. of Adj., 90 N.J. Super. 295 (Law Div. 1966); prohibition of trailer camps and parks in an industrial zone, Vickers v. Gloucester Tp. Comm., 37 N.J. 232 (1967); outdoor storage of vehicles, N.Y. Central Railroad Co. v. Ridgefield, 84 N.J. Super. 85 (App. Div. 1964); minimum square feet for homes upheld, Lionshead Lakes, Inc. v. Wayne Tp., 10 N.J. 165 (1952), app. dism. 344 U.S. 919, 73 S.Ct. 386, 97 L.Ed. 708, minimum lot size of five acres upheld, Fischer v. Bedminster Tp., *464 11 N.J. 194 (1952); prohibition of hotels and motels in residential district allowed, Pierro v. Baxendale, 20 N.J. 17 (1955); and height restriction allowed, Pequannock Tp. v. DeWilde, 21 N.J. Super. 517 (App. Div. 1952), adopting the dissenting opinion in Brookdale Homes, Inc. v. Johnson, 126 N.J.L. 516 (E. & A. 1941).
In recent years several jurisdictions have gone beyond the position that allows a consideration of aesthetics along with other factors and have decided that under certain conditions aesthetic considerations alone are a sufficient basis for zoning ordinances. Cromwell v. Ferrier, 19 N.Y.2d 263, 279 N.Y.S. 2d 22, 225 N.E.2d 749 (Ct. App. 1967), Lexington v. Govenar, 295 Mass. 31, 3 N.E.2d 19 (Sup. Jud Ct. (1936).
New Jersey has not yet reached this point. In Piscitelli v. Scotch Plains Tp. Comm., 103 N.J. Super. 589 (Law Div. 1968), it was stated:
There is no doubt, and the law is well settled, that aesthetic value plays an important role in modern-day zoning legislation. Nevertheless, in this State it has been held that zoning power may not be exercised for purely aesthetic considerations. Passaic v. Paterson Bill Posting, etc., Co., 72 N.J.L. 285 (E. & A. 1905); Romar Realty Co. v. Board of Com'rs of Borough of Haddonfield, 96 N.J.L. 117 (Sup. Ct. 1921); Vassallo v. Board of Com'rs of City of Orange, 125 N.J.L. 419 (E. & A. 1940), Pfister v. Municipal Council of City of Clifton, 133 N.J.L. 148 (Sup. Ct. 1945); Hendlin v. Fairmount Const. Co., 8 N.J. Super. 310 (Ch. Div. 1950.) [at 597]
Thus, the hesitancy of the courts to support aesthetic interests at the expense of a landowner's loss of unrestricted use of his property exists.
It is the plaintiffs' position that the effect which the present ordinance is intended to have could be reached by less restrictive methods. In J.D. Const. v. Freehold Tp., Bd. of Adj., 119 N.J. Super. 140 (Law Div. 1972), the court, in discussing restrictive ordinances, stated:
Zoning regulations must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not have offensive character of those which caused the problem sought to be ameliorated.
*465 [Zoning regulations] must not impress unnecessary and excessive restrictions on use of private property.
Test of validity of a municipal zoning ordinance is reasonableness of ordinance viewed in light of existing circumstances in the community and the physical characteristics of the area; cognizance must be taken of the problem to be solved by the municipality. [at 145]
After a close examination it is the opinion of this court that while aesthetics is a valid motivating force, the ordinance in question is unduly restrictive.
In the present case we are dealing with an ordinance which has restricted the mode by which individuals may express a political position. Such expression strikes a good deal closer to the First Amendment than a prohibition against commercial advertising through billboards or any of the many other areas in which aesthetics has been the motivating force for the prohibitions contained in zoning ordinances.
Any restriction of First Amendment rights must be limited to only that which is necessary to accomplish the intended purpose.
An Ohio case, Peltz v. City of South Euclid, 11 Ohio St.2d 128, 228 N.E.2d 320 (1967), cited by plaintiffs, involved an ordinance which prohibited political signs from the entire city for both aesthetic and traffic safety purposes. The Supreme Court of Ohio found this ordinance in violation of the First and Fourteenth Amendments. The court stated (at 324) that "Even the regulation of traffic may not be attempted by means which invade explicit constitutional liberties."
The ordinance in question, as a result of its broad prohibitions, upsets the delicate balance between zoning for the community welfare and individual freedom.
It is this court's belief that an ordinance can be framed which would allow individuals to express their political opinions as desired by plaintiffs but which could be sufficiently restrictive to prevent all but a minimal reduction in the local aesthetic values.
In accordance with the above stated opinion, judgment is granted for plaintiffs.