Mac BORRAGO d/b/a Show World Cinema X, Ideal Art Cinema, and Shelmar Follies, Plaintiff,

v.

CITY OF LOUISVILLE et al., Defendants.

BROWN BEAR, INC., Plaintiff,

v.

Honorable William B. STANSBURY et al., Defendants.

Civ. A. Nos. C 77–0491 L(A), C 77–0522 L(A).

United States District Court, W. D. Kentucky, Louisville Division.

Feb. 15, 1978.

Robert E. Smith, Atlanta, Ga., Bruce D. Prizant, Louisville, Ky., for plaintiff in No. C 77–0491 L(A).

David Kaplan, Louisville, Ky., for plaintiff in No. C 77–0522 L(A).

John T. Fowler, III, Winston E. King, Paul V. Guagliardo, Louisville, Ky., for Stansbury and Scholtz.

Walter R. Butt, III, Louisville, Ky., for Bd. of Aldermen.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

The above-styled actions have been consolidated since they involve identical issues and, therefore, this memorandum opinion is applicable to both actions. A case involving the identical issues presented in these two actions has recently been decided by The Honorable Thomas A. Ballantine, Judge for the United States District Court for the Western District of Kentucky.

Plaintiff, Mac Borrago, d/b/a Show World Cinema X, Ideal Art Cinema and Shelmar Follies, has presented to the Court his written motion for a preliminary injunction, together with a memorandum in support thereof, and defendants, City of Louisville, et al, have, in turn, filed their memorandum in opposition to the motion.

The plaintiff seeks to enjoin the enforcement of Ordinance No. 69, Series 1977, City of Louisville. That Ordinance contains a declaration to the effect that the regulation of adult entertainment activities within the City is a public necessity and is required to protect property values, eliminate blight, and prevent further deterioration of the City's neighborhoods, promote the return of residents and businesses to the City's neighborhoods, and decrease the incidence of crime and juvenile delinquency.

The declaration is buttressed by findings that the adult entertainment activities are located near parks, malls, and open spaces, and near schools that cater to use by family groups and children, and have an adverse effect on the use of such properties; that these entertainment activities contribute to increased crime and juvenile delinquency; that they tend to attract an undesirable quantity and quality of clientele; and adversely affect property values; and contribute to a general deterioration of the City's neighborhoods; that millions of dollars have been spent by the City and the United States on Urban Renewal and other projects to eliminate blight and prevent such deterioration; and that the City is presently engaged in attempting to promote the return of residents and businesses to the City.

The Ordinance, in Section 2 E, defines "Adult Entertainment Activities" and does so in specific language tailored to the opinion of the Supreme Court in the case of *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In Section 3, the Ordinance restricts adult entertainment establishments from having more than one outside sign, which is not to exceed 10 feet in length and 3 feet in width, and which is not to contain any emphasis, either by wording or picture or otherwise, on matters relating to sexual activities.

Section 3 B prohibits the display of stock-in-trade of adult entertainment establishments to the public view from outside the establishment. Section 3 C prohibits the entry of a person under 18 years of age into such establishments, and Section 3 D provides that the operator of such establishments shall insure compliance with Section 3 C by having an attendant at the entrance to his establishment. Section 3 E pertains to adult amusement arcades and contains other safety regulations. Section 4 requires the licensing of adult entertainment activity together with the giving of certain information as to the ownership thereof, along with information pertaining to criminal convictions of the applicant and his fellow-owners, partners and agents.

Other provisions in the licensing portion of the Ordinance provide for such matters as proof of registration with the Commissioners of the Sinking Fund, Certificate of Occupancy issued by the Zoning Inspector, and a certificate from the Louisville Division of Fire stating that all fire regulations have been met. Section 4 B through K relates to the issuance of licenses and the effective date of the Ordinance, and provides for an annual license fee of $250, with a license fee transfer to be assessed at $100.

If the owner, or any employee, partner, director or shareholder has committed a felony or crime of moral turpitude, or if such crimes are committed on the premises,

the Director of Safety is given the power to revoke the license. In addition, any person who violates the provision of the Ordinance, upon conviction, is subject to fines not to exceed $100 per day or imprisonment not to exceed 50 days, or both, for each offense. Each day of each violation constitutes a separate offense.

The Supreme Court case most nearly in point is *Young v. American Mini Theatres, supra.* There, the Supreme Court upheld zoning ordinances adopted by the City of Detroit to differentiate between motion picture theatres which exhibit sexually explicit movies and those which do not. The ordinances prohibited the location of an adult theatre within 1,000 feet of any other two " 'regulated uses' " or within 500 feet of a residential area.

In reaching its decision, the court noted at p. 62 of 427 U.S., at p. 2448 of 96 S.Ct., "that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements" and further that a city may control the location of such theatres either by confining them to certain specified commercial zones or requiring that they be dispersed throughout the city.

Since *Young, supra,* explicitly holds that the regulation of the place where adult films may be exhibited does not offend the First Amendment, it does not control the decision of the case at bar. However, it approves the statements made by District Judges Kennedy and Gubow in the district court's joint opinion disposing of *Young* and its companion case to the effect that where "the City has stated a reason for adopting an ordinance which is a subject of legitimate concern, that statement of purpose is not subject to attack." See 427 U.S. at p. 56, footnote 11, 96 S.Ct. at 2445, and *Nortown Theatre Incorporated v. Gribbs,* 373 F.Supp. 363, 367 (E.D.Mich.1974).

■ Since the City has stated a reason for adopting the Ordinance which is a matter of legitimate concern, we turn now to the test proposed by Mr. Justice Powell in his concurring opinion in *Young, supra,* where he states that the ordinance in

*Young* prompted essentially two inquiries with respect to the First Amendment. The first is "(d)oes the ordinance impose any content limitation on the creators of adult movies or their ability to make them available to whom they desire" and secondly "does it restrict in any significant way the viewing of these movies by those who desire to see them?" The answer to both of these inquiries is in the negative, with the exception of that portion of the Ordinance referring to juveniles. However, under the holding in *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), and the dissenting opinion in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 73, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the state may prohibit the distribution or exhibition of explicit sexual materials to juveniles even though not obscene.

■ With regard to the question of the billboard or advertising of plaintiff's business, we believe that such cases as *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) and *National Labor Relations Board v. Gissel Packing Company,* 395 U.S. 575, 617, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), stand for the proposition that the governmental boards have the right to regulate and limit the content of advertisements. As the Supreme Court points out in *Young, supra,* 427 U.S. at p. 68, 96 S.Ct. 2440, the content of a particular advertisement may determine the extent of its protection under the First Amendment.

We believe that the restrictions on advertisements by adult entertainment establishments are valid and distinct, in that they do not regulate the content of the movies or books which are being exhibited inside the establishment, but merely limit the commercial advertisement of these products. The other regulations contained in the Ordinance have a legitimate connection with the purposes and findings made in the Ordinance, in that they sustain the need and desire of the City for regulation of a form of entertainment which, in cases such as *Young, supra,* has been specifically found to adversely affect property values, cause an

increase in crime, attract an undesirable quantity and quality of transients, and encourage residents and businesses to move elsewhere.

■ It is appropriate to analyze the permissibility of legal action under the four-part test of *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), cited by Mr. Justice Powell in his concurring opinion in *Young, supra*, 427 U.S. at pp. 79 and 80, 96 S.Ct. 2440, and by Judge Celebrezze in his dissenting opinion in *American Mini Theatres, Inc. v. Gribbs*, 518 F.2d 1014 (6th Cir. 1975), reversed in *Young, supra*. "Under that test, a governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, 'if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on . . . First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" See 427 U.S. at pp. 79, 80, 96 S.Ct. at p. 2451.

■ There is no question that the Ordinance is within the power of the Board of Aldermen to enact. See *Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Nor is there any doubt that the interests furthered by the Ordinance are important and substantial. Without stable neighborhoods, residential and commercial sections of a modern city can deteriorate into an urban jungle with tragic consequences to social, environmental, and economic values. See *Young, supra*, 427 U.S. at p. 80, 96 S.Ct. 2440, concurring opinion of Mr. Justice Powell.

The third test is also met here, since the governmental interest is unrelated to the suppression of free expression, as the Ordinance in question does not prohibit the showing of adult materials but merely regulates the exhibitors by means of licensing, advertising and safety regulations.

The fourth test, which requires the incidental restriction on First Amendment freedom to be no greater than is essential, is also met, in light of the findings by the Board of Aldermen that the showing and advertising of adult entertainment attracts an undesirable quantity and quality of transients, causes an increase in crime, and encourages residents and businesses to move elsewhere. The findings, as to the undesirability of the transients who are attracted to this type of entertainment and as to the resulting increase in crime, justify the City in imposing strict controls over the persons who manage and control these types of businesses and also justify the restrictions on advertising.

In light of the above, the Court has this day entered its order denying the motion of the plaintiffs for a preliminary injunction, the same result reached by Judge Ballantine in the case presented to him for decision.