689 A.2d 201

HAMILTON AMUSEMENT CENTER, INC., T/A VIDEO EXPRESS, L.O.J., INC., T/A THE EMPORIUM, PYNCO, INC., T/A CAMELOT BOOK STORE, AND CRESCENDO BOOK, INC., T/A CARNIVAL BOOKS, PLAINTIFFS–RESPONDENTS, v. DEBORAH PORITZ, ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1997—Decided February 28, 1997.

232

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*Larry R. Etzweiler,* Senior Deputy Attorney General, argued the cause for appellants (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Etzweiler,* on the brief).

*Paul J. Cambria, Jr.,* of the New York Bar, argued the cause for respondents (*Steven S. Polinsky,* of the New Jersey Bar, attorney and on the brief; *Mr. Cambria, Jr., Cherie L. Peterson,* and *Barry Nelson Covert,* of the New York Bar, also on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This is an appeal by the State of New Jersey from an order permanently enjoining enforcement of *N.J.S.A.* 2C:34–7(c) as an unconstitutional content-based restriction on free speech or alternatively as void for vagueness.

Hamilton Amusement Center, Inc., t/a Video Express, L.O.J., Inc., t/a The Emporium, Pynco, Inc., t/a Camelot Book Store, and Crescendo Book, Inc., t/a Carnival Books (collectively referred to as plaintiffs) own or operate sexually oriented businesses that use signs which exceed the statute's restrictions on size, number and content.[1] Plaintiffs sought a declaratory judgment declaring *N.J.S.A.* 2C:34–7(c) unconstitutional under the First Amendment to the United States Constitution and Article I paragraph 6 of the New Jersey Constitution, and seeking temporary injunctive relief from enforcement of the statute.

■ The Law Division Judge found in plaintiffs' favor, holding that *N.J.S.A.* 2C:34–7(c) was a content-based restriction on speech and presumptively unconstitutional under strict scrutiny. He concluded that the Legislature did not have a compelling interest to warrant the restriction on speech. Alternatively, the judge concluded that the statute would also fail under the less onerous

---

[1] Apparently, plaintiffs' signs advertise the type of products sold, operating hours and location of entrances.

content neutral test of time, place and manner because it was not narrowly tailored. An order was entered making the preliminary injunction final. We conclude that the statute involves commercial speech which does not trigger the strict scrutiny standard.[2] The statute passes constitutional muster, and hence we reverse.

I.

*N.J.S.A.* 2C:34-7 was enacted by *L.* 1995, *c.* 230, effective September 15, 1995. The sign provisions of the statute are just one subdivision of buffering and site provisions contained in a comprehensive legislative package aimed at sexually oriented businesses. The statute provides:

Sexually oriented businesses; restrictions on location and display of signs; perimeter buffer requirements

a. Except as provided in a municipal zoning ordinance adopted pursuant to N.J.S. 2C:34-2, no person shall operate a sexually oriented business within 1,000 feet of any existing sexually oriented business, or any church, synagogue, temple or other place of public worship, or any elementary or secondary school or any school bus stop, or any municipal or county playground or place of public resort and recreation, or within 1,000 feet of any area zoned for residential use. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act where another sexually oriented business, an elementary or secondary school or school bus stop, or any municipal or county playground or place of public resort and recreation is subsequently established within 1,000 feet, or a residential district or residential lot is subsequently established within 1,000 feet.

b. Every sexually oriented business shall be surrounded by a perimeter buffer of at least 50 feet in width with plantings, fence, or other physical divider along the outside of the perimeter sufficient to impede the view of the interior of the premises in which the business is located. The municipality may, by ordinance, require the perimeter buffer to meet additional requirements or standards. This subsection shall not apply to a sexually oriented business already lawfully operating on the effective date of this act.

---

[2] As this statute applies only to commercial speech, it need only be given an intermediate level of scrutiny. *Florida Bar v. Went For It, Inc.,* —— *U.S.* ——, —————, 115 *S.Ct.* 2371, 2375–2376, 132 *L.Ed.*2d 541, 549 (1995); *Association of Nat. Advertisers, Inc. v. Lungren,* 44 *F.*3d 726, 731 (9th Cir.1994), *cert. denied,* —— *U.S.* ——, 116 *S.Ct.* 62, 133 *L.Ed.*2d 25 (1995).

c. No sexually oriented business shall display more than two exterior signs, consisting of one identification sign and one sign giving notice that the premises are off limits to minors. The identification sign shall be no more than 40 square feet in size.

d. A person who violates this section is guilty of a crime of the fourth degree.

[*N.J.S.A.* 2C:34–7(c),(d) ].

■ The sponsors' statement to Assembly Bill No. 252 (A–252) indicates that one purpose of the sign restrictions is to further the government's interest in reducing motor vehicle accidents by eliminating distractions caused by numerous signs. Facially, the statute also reflects a concern for the welfare of minors. This concern is also clear from the legislative history accompanying the package of bills [3] enacted to regulate sexually oriented businesses, and the specific reference in *N.J.S.A.* 2C:34–7(c) requiring one sign to indicate that the establishment is "off limits to minors." Both aims are appropriate under the State's police power and general welfare responsibilities.

■ Our inquiry is limited when reviewing legislative motive. *See Michael M. v. Sonoma County Superior Court*, 450 *U.S.* 464, 469–470, 101 *S.Ct.* 1200, 1204–1205, 67 *L.Ed.2d* 437, 443 (1981); *Palmer v. Thompson*, 403 *U.S.* 217, 224, 91 *S.Ct.* 1940, 1944, 29 *L.Ed.2d* 438, 444 (1971); *Two Guys from Harrison, Inc. v. Furman*, 32 *N.J.* 199, 226,. 160 *A.2d* 265 (1960); *Board of Rec. Commissioners, Rutherford v. Rutherford*, 166 *N.J.Super.* 476, 482–483, 400 *A.2d* 95 (App.Div.1979); *N.J. Turnpike Auth. v. Sisselman*, 106 *N.J.Super.* 358, 367, 255 *A.2d* 810 (App.Div.), *certif. denied*, 54 *N.J.* 565, 258 *A.2d* 16 (1969); *City of Las Vegas v. Foley*, 747 *F.*2d 1294, 1297 (9th Cir.1984). On review, the question is whether the Legislature has the power to act and whether it exercised that power for a permitted purpose under the Constitution of this State and the United States.

[3] Assembly Bills Nos. 252, 842 and Senate Bill No. 342.

A–252 and Senate Bill No. 342 (*N.J.S.A.* 2C:33–12.2)[4] were enacted as part of a legislative package addressing different aspects of sexually oriented businesses.

■ While non-obscene sexual expression receives some protection under the First Amendment, *see TK's Video, Inc. v. Denton County, Tex.,* 24 *F.*3d 705, 707 (5th Cir.1994); *Mitchell v. Comm'n on Adult Entertainment Est.,* 10 *F.*3d 123, 130 (3rd Cir.1993); *see e.g., Barnes v. Glen Theatre, Inc.,* 501 *U.S.* 560, 111 *S.Ct.* 2456, 115 *L.Ed.*2d 504 (1991) (live nude dancing in adult book store and nightclub); *Schad v. Borough of Mt. Ephraim,* 452 *U.S.* 61, 101 *S.Ct.* 2176, 68 *L.Ed.*2d 671 (1981) (live nude dancer in book store); *Erznoznik v. City of Jacksonville,* 422 *U.S.* 205, 95 *S.Ct.* 2268, 45 *L.Ed.*2d 125 (1975) (motion pictures portraying nudity), the Supreme Court permits the targeting of sexually oriented businesses for regulation because of the unique problems they present to the community. *Young v. American Mini Theatres,* 427 *U.S.* 50, 70–71, 96 *S.Ct.* 2440, 2452–2453, 49 *L.Ed.*2d 310, 326 (1976); *SDJ, Inc. v. City of Houston,* 837 *F.*2d 1268, 1273 (5th Cir.1988); *Mr. B's Bar and Lounge v. City of Louisville,* 630 *S.W.*2d 564, 567 (Ky.App.1982).

*N.J.S.A.* 2C:34–7(c) to an extent impacts speech. *See Baldwin v. Redwood,* 540 *F.*2d 1360, 1366 (9th Cir.1976), *cert. denied, sub nom. Leipzig v. Baldwin,* 431 *U.S.* 913, 97 *S.Ct.* 2173, 53 *L.Ed.*2d 223 (1977) ("Communication by signs and posters is virtually pure speech"). Subsection (c) limits the number of signs on a sexually oriented business to two, limits the size of one of the signs to forty square feet and prescribes the content of both signs.

■ Regulation of signs has long been an appropriate subject of local zoning regulations. *State v. Miller,* 83 *N.J.* 402, 416 *A.*2d 821 (1980); *United Advertising Corp. v. Borough of Metuchen,* 42 *N.J.* 1, 198 *A.*2d 447 (1964); *Napierkowski v. Gloucester Tp.,* 29 *N.J.*

---

[4] *N.J.S.A.* 2C:33–12.2 was the subject of a separate appeal decided under docket number A–1729–95, captioned *Chez Sez VIII v. State,* and reported at 297 *N.J.Super.* 331, 688 *A.*2d 119 (App.Div.1997).

481, 150 *A.*2d 481 (1959); *Berg Agency v. Maplewood Tp.*, 163 *N.J.Super.* 542, 395 *A.*2d 261 (Law Div.1978); *Schoen v. Hillside Tp.*, 155 *N.J.Super.* 286, 382 *A.*2d 704 (Law Div.1977); *Farrell v. Teaneck*, 126 *N.J.Super.* 460, 315 *A.*2d 424 (Law Div.1974); *see also Bd. of Adj. v. Osage Oil & Transp., Inc.*, 258 *Ark.* 91, 92–93, 522 *S.W.*2d 836, 837 (Ark.), *cert. denied* and *app. dism'd*, 423 *U.S.* 941, 96 *S.Ct.* 350, 46 *L.Ed.*2d 273 (1975) ("[I]t would be a waste of time and effort to cite the cases" that say a municipality has the power to regulate the "size and location of billboards and other commercial signs."). Concurrent with the right to operate a business within this State is the "right to maintain a business sign on the premises *subject to reasonable regulations.*" *United Advertising Corp. v. Borough of Raritan*, 11 *N.J.* 144, 150, 93 *A.*2d 362 (1952) (Brennan, J.) (distinguishing billboards and on-premises signs) (emphasis added). The Government may regulate and limit the content of these advertisements. *Lehman v. City of Shaker Heights*, 418 *U.S.* 298, 303, 94 *S.Ct.* 2714, 2717, 41 *L.Ed.*2d 770, 777 (1974); *SDJ, Inc. v. City of Houston*, *supra* (837 *F.*2d at 1278); *Borrago v. City of Louisville*, 456 *F.Supp.* 30, 32 (W.D.Ky.1978).

*N.J.S.A.* 2C:34–7(c) addresses only commercial speech. Subsection (c) of the statute was enacted in conjunction with a wide variety of regulations aimed at ameliorating the secondary effects of sexually oriented businesses. These regulations prohibit the use of private booths, restrict the location of sexually oriented businesses within a community and prescribe buffering standards. As we interpret *N.J.S.A.* 2C:34–7(c), its predominant purpose is to strike a balance between the right of sexually oriented businesses to reasonably announce their presence to potential patrons and the legislative perception that sexually oriented signage on a large scale creates distractions which interfere with traffic safety. Subsection (c) also reinforces the statutory prohibition against minor children frequenting these businesses. Moreover, as we note *infra*, this section was part of a legislative package aimed at other police power concerns. We can find nothing in the legislative

history to suggest that the Legislature intended to curb political or noncommercial speech, and as we read the statute it does not.

While the Legislature may single out sexually oriented businesses as a basis for regulating commercial speech, this form of speech is protected under the First Amendment if it is not misleading and pertains to lawful activity. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 *U.S.* 557, 561, 100 *S.Ct.* 2343, 2348–2349, 65 *L.Ed.*2d 341, 348 (1980); *Matter of Anis*, 126 *N.J.* 448, 456, 599 *A.*2d 1265, *cert. denied, sub nom. Anis v. N.J. Committee on Attorney Advertising*, 504 *U.S.* 956, 112 *S.Ct.* 2303, 119 *L.Ed.*2d 225 (1992). Even protected commercial speech may be regulated if the regulation "directly advance[s] a substantial government interest" and is "appropriately tailored to that purpose." *Matter of Anis, supra* (126 *N.J.* at 456, 599 *A.*2d 1265) (citing *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, 496 *U.S.* 91, 100, 110 *S.Ct.* 2281, 2287, 110 *L.Ed.*2d 83, 94 (1990)).

The regulation of signs and billboards has long been recognized as serving the government's substantial interest in traffic safety. *See Metromedia Inc. v. San Diego*, 453 *U.S.* 490, 509, 101 *S.Ct.* 2882, 2893, 69 *L.Ed.*2d 800, 816 (1981); *Railway Express Agency, Inc. v. New York*, 336 *U.S.* 106, 109, 69 *S.Ct.* 463, 465, 93 *L.Ed.* 533 (1949); *Arlington Cty. Republican Com. v. Arlington Cty.*, 983 *F.*2d 587, 594 (4th Cir.1993). In fact, sign restrictions directed specifically at sexually oriented businesses have been upheld in the interest of preserving neighborhoods and protecting minors. *See SDJ, Inc. v. City of Houston, supra* (837 *F.*2d at 1280); *Borrago v. City of Louisville, supra* (456 *F.Supp.* at 33). Such businesses have been found to have deleterious effects on minors by promoting juvenile delinquency, contributing to an overall increase in crime, leading to the general deterioration of neighborhoods, and lowering property values. *See SDJ, Inc. v. City of Houston, supra* (837 *F.*2d at 1280); *Borrago v. City of Louisville, supra* (456 *F.Supp.* at 31).

The Legislature was presumably responding to these concerns in enacting the package of bills that included what became *N.J.S.A.* 2C:34–7. *See Renton v. Playtime Theatres, Inc.*, 475 *U.S.* 41, 51, 106 *S.Ct.* 925, 931, 89 *L.Ed.*2d 29, 40 (1986). On the legislative record, objective lawmakers could reasonably conclude that sexually oriented businesses are associated with higher crime rates and cause a deterioration in the quality of neighborhood life. By isolating these businesses through dispersal, perimeter buffers, and signage restrictions included in *L.* 1995, *c.* 230, they addressed these legitimate concerns while still allowing these businesses to advertise and operate.

 A statute regulating commercial speech cannot be substantially broader than necessary. *Matter of Anis, supra* (126 *N.J.* at 456, 599 *A.*2d 1265) (citing *Peel v. Attorney Registration and Disciplinary Commission of Illinois, supra* (496 *U.S.* at 100, 110 *S.Ct.* at 2287, 110 *L.Ed.*2d at 94). But in addressing substantial needs, the government must be afforded "a reasonable opportunity to experiment with solutions to admittedly serious problems." *City of Pasco v. Rhine*, 51 *Wash.App.* 354, 753 *P.*2d 993, 997 (1988)[5] (quoting *Renton v. Playtime Theatres, Inc., supra* (475

---

[5] In *City of Pasco v. Rhine*, 51 *Wash.App.* 354, 753 *P.*2d 993 (1988), the court upheld a municipal ordinance which restricted signs advertising sexually explicit movie theaters. *Id.*, 753 *P.*2d at 994. Among the restrictions were:

4. There shall not be visible to passerby standing anywhere outside the building any drawings, pictures, and other illustrative material.

\* \* \* \* \* \* \* \*

7. Informational material on the building, including the sign/reader board, shall be limited to the name of the theater, ownership information, a designation or identification that adult films are showing, the days and hours of its operation, and the titles of any films showing or coming attractions.

The ordinance was directed at advertising of sexually explicit movie theaters. *Id.* at 994. The court adopted the *Young v. American Mini Theatres, Inc., supra* (427 *U.S.* at 70–71, 96 *S.Ct.* at 2452–2453, 49 *L.Ed.*2d at 326), rationale that the government can classify "based upon the sexually explicit content of the activity or expression involved, and differing treatment accorded such speech by certain locational restrictions, was a valid time, place, and manner restriction," and concluded that the sign restriction's purpose was only to regulate commercial speech such as advertising and consequently applied the

*U.S.* at 52, 106 *S.Ct.* at 931, 89 *L.Ed.*2d at 41) (quoting *Young v. American Mini Theatres, Inc., supra* (427 *U.S.* at 71, 96 *S.Ct.* at 2452, 49 *L.Ed.*2d at 327))). There must be a *"rational relationship* between limiting advertising . . . and the substantial interest [the government] has in mitigating the secondary impacts. . . ." *City of Pasco v. Rhine, supra* (753 *P.*2d at 997) (emphasis added).

*N.J.S.A.* 2C:34–7(c) is not substantially broader than necessary. The two sign limitation is justified given the undesirable secondary effects that such signs attract, *e.g.,* higher incidents of crime, child delinquency. *See Borrago, supra* (456 *F.Supp.* at 33); *Dover News, Inc. v. City of Dover,* 117 *N.H.* 1066, 381 *A.*2d 752, 755–56 (1977). Indeed, the statute has "stopped short of fully accomplishing its ends. It has not prohibited all [signs]. . . ." *Metromedia, Inc. v. San Diego, supra* (453 *U.S.* at 508, 101 *S.Ct.* at 2898, 69 *L.Ed.*2d at 815). *Compare SDJ, Inc. v. City of Houston, supra* (837 *F.*2d 1268); *with Basiardanes v. City of Galveston,* 682 *F.*2d 1203 (5th Cir.1982) (total ban on outside advertising impermissible). Not only does the statute allow two signs to be posted but it in no way proscribes other modes of advertisement. Additionally, the statute does not inhibit in any way the material that may be displayed within the store nor does it place any significant limitation on what may be advertised upon the business's two signs.[6]

---

*Metromedia Inc. v. San Diego. supra* (453 *U.S.* at 507, 101 *S.Ct.* at 2892, 69 *L.Ed.*2d at 815); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, supra* (447 *U.S.* at 566, 100 *S.Ct.* at 2351, 65 *L.Ed.*2d at 351), test of commercial speech. *Id.* at 996.

[6] We would not construe the sign requirements to prohibit affixing the usual street numbers on the property required by federal postal regulations in addition to the two signs specified in subsection (c), or even the posting of temporary political signs. *See State v. Mortimer,* 135 *N.J.* 517, 533–534, 641 *A.*2d 257, *cert. denied,* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994); *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462 *A.*2d 573 (1983).

## II.

The Law Division also held the statute void for vagueness. The State took the position in the trial court that an "identification sign" as designated in the statute pertained to "name only" signs. The judge found that "identification" could mean more than name only, and therefore was impermissibly vague. On appeal the State concedes that the word "identification" connotes more than the name of the establishment.

The vagueness doctrine is premised on the notion that the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 *U.S.* 104, 108, 92 *S.Ct.* 2294, 2298, 33 *L.Ed.*2d 222, 227 (1972). A common sense approach is required in reading the legislative enactment, *SDJ, Inc. v. City of Houston, supra* (837 *F.*2d at 1278), in terms of the persons who may be subject to it, *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 118–120, 462 *A.*2d 573 (1983), and read it in context with its intended purpose. *State v. Cameron,* 100 *N.J.* 586, 591, 498 *A.*2d 1217 (1985). It is our duty to endeavor to interpret a statute so that it may comply with constitutional requirements.

As we interpret *N.J.S.A.* 2C:34–7(c), an identification sign may communicate not only the name of the establishment, but also the street number, telephone number, operating hours and general nature of the establishment in order to identify the business. Such a requirement is not vague.

Reversed.